# WILLIAM F. HAIR
## v.
## NELS JOHNSON.

*Master and Servant—Wages—Written Contract— Mistake—Reformation.*

1. When parties put their agreements in writing it becomes the exclusive means of proving what they have agreed to, unless it can be shown that there was a mistake in the writing by inserting or omitting words or clauses. The words of the writing being such as the parties agreed upon, neither party can claim that they do not mean what he supposed, even as a defense.

2. Upon a bill filed for the purpose of obtaining a certain share of the profits arising out of the construction of a viaduct in conformity with a certain contract in writing, the defendant contending that said contract contained a mistake, and praying that the same be reformed, this court declines, in view of the evidence, to interfere with the decree denying such request.

[Opinion filed April 21, 1890.]

In error to the Superior Court of Cook County; the Hon. Egbert Jamieson, Judge, presiding.

Mr. John N. Jemison, for plaintiff in error.

Mr. George F. Blanke, for defendant in error.

Gary, P. J.  Hair had a contract with the city of Chicago for building a viaduct over Kinzie street at Ashland avenue. Whether it was for gross price for the whole work, or separate price for different parts, and what was included, whether only retaining walls and filling, or superstructure and paving, this record does not show.

These parties then made a contract under seal that Johnson would for Hair, " superintend, manage and take entire charge of the masonry work of such viaduct, which shall include the building of curb walls, piers and abutments, digging of ditches and the procuring of masons and laborers for the doing of such work, but at the charge of said Hair." Hair agreed to " furnish all material, do the filling, and furnish moneys " " so as to cause no delay."

" Johnson, in payment of his services hereunder, shall receive forty (40) per centum of the net profits the contract for the construction of such viaduct may yield; but in the event of no profits then said Johnson shall have no claim for services against said Hair."

There was a further provision that Johnson should at all times be entitled to full information for the purpose of ascertaining the amount of profits.

The work being done and Johnson having performed his part, he filed the original bill in this case, on which no question now arises for his share of the profits of building the viaduct.

Hair, by his answer, alleged a mistake in the contract; that Johnson was to have had forty per centum of the profits on that portion only of the work which he superintended, and

also filed his cross-bill for a reformation of the contract, alleging the same mistake. This cross-bill the Superior Court dismissed on a hearing of the evidence, and from the decree so dismissing it, this appeal is taken.

There is considerable evidence which is consistent with the allegation of the appellant that the parties agreed that the compensation for the appellee was to be forty per centum of the profits of only that part of the work which he superintended. It appeared that there was a separate price for such part fixed either by the contract with the city, or by the parties themselves, but as that does not appear, most of such evidence, consisting of testimony as to declarations made by the appellee, is consistent with the theory that when he stated that he had no interest in anything but the work he superintended, he referred only to his personal superintendence. In any possible view of the case he had an interest in the cost of the other part of the work. If a separate price had been fixed for the portion he superintended, then his interest was to have as much of the cost of the whole work go into the account of the other parts, and as little upon his part as possible.

On the other hand if no separate price was fixed, and the profits of the whole work were to be apportioned to the respective parts in the ratio of their cost, his interest was the other way. It is quite unnecessary to consider the evidence in detail.

"When parties put their agreements in writing, it becomes the exclusive means of proving what they have agreed to, unless it can be shown that there was a mistake in the writing by inserting or omitting words and clauses. The words of the writing being such as the parties agreed upon, neither party can claim that such words do not mean what he supposed, even as defense. To vary or avoid such writing "all parol testimony of conversations held between the parties, or of declarations made by either of them, whether before or after, or at the time of the completion of the contract, will be rejected." 2 Taylor's Ev. 964.

The evidence shows that the agreement in this case was written in duplicate. After it was written, the writer of it

read one copy aloud and slowly, the appellant holding the other to follow the reading.   He does not claim that he was under any mistake as to what the writing said.   He is bound by it.   Oswald v. Sproehnle, 16 Ill. App. 368, and many cases there cited.

There is no error and the decree is affirmed.

*Decree affirmed.*