CHARLES S. WOLSEY AND CHARLES H. BUNKER

V.

CHARLES H. NEELEY.

*Contracts—Reformation of—Usury.*

1. An unambiguous written contract can not be changed by parol testimony.

2. Upon a bill filed to reform a written contract, this court holds that the decree of the trial court granting the same was erroneous in that the complainant did not need such reformation, the contract as written being of the same legal effect as the court has made it, and further because the same was read over by the parties thereto before signing, and therefore the complainant was not entitled to it.

3. Where a written contract is not usurious on its face, but may be a cover for usury, the real transaction may be shown by extrinsic evidence.

[Opinion filed November 17, 1892.]

APPEAL from the Circuit Court of Cook County; the Hon. LORIN C. COLLINS, Judge, presiding.

Messrs. M. B. & F. S. LOOMIS, for appellants.

The court says in Goltra et al. v. Sanasack et al., 53 Ill. 456: "The rule is inflexible, that a mistake or misapprehension of the law is never relieved against or corrected; * * * and the rule applies equally in the administration of criminal, common law and equitable justice. All three of the courts are governed by this maxim." See also Paullissen v. Loock, 38 App. Ct. 510.

"Where a clause in a deed was agreed upon by the parties, was put into the deed in terms as they agreed and directed it to be put in, and was then correctly read to and approved by them, but it did not bear the construction which one of the parties put upon it, or supposed at the time that it would bear, held, that the mistake was in the construction of the clause, which is a mistake of law and not of fact, and affords no ground for the reformation of the deed." Oswald v. Sproehnle, 16 Ill. App. 368; Hair v. Johnson, 35 App. Ct. 562.

The Supreme Court has upheld this doctrine from the day it first came into being until now. In a very late case decided in January, A. D. 1891, it says: "A mistake in the legal meaning of words used in a deed, or other contract, or in the proper construction of the words employed, or as to the legal effect of those words, where no fraud, undue influence or imposition has been used, will afford no equitable ground for a reformation of the instrument, such mistake being one of law. It is for mistakes of fact alone, that contracts may be reformed in equity." Fowler v. Black et al., 136 Ill. 363.

In Calverly v. Harper, 40 Ill. App. 96, we find the court again affirming this doctrine in the following words:

"It is apparent from the evidence in this record that if any mistake was made, it was a misapprehension of the legal effect of the terms used; but for this no reformation of a contract can be had." Citing Wood v. Price, 46 Ill. 439.

The following extract from an early opinion of the Supreme Court of this State seems almost to have been

made to fit this case, and the rulings, at least, are on questions right in point.  They explain themselves:

"Where a contract is reduced to writing, and deliberately read over by the parties before executing it, and there is no evidence of any fraud, a bill can not be sustained by one of the parties to reform the contract upon the ground that he understood its effect to be different from its legal one.  To reform a contract, it must be shown that the true intention of the parties was different from the contract as reduced to writing, and that, by some fraud or mistake, the real contract between the parties was not truly reduced to writing.  Proof of the parties' interpretation of the contract is not sufficient to show fraud or mistake in drawing it up.  A contract deliberately made, read over, and executed by the parties, will not be reformed upon the ground that the witnesses present understood its effect to be different from its legal one."  Coffing v. Taylor, 16 Ill. 457.

In Oswald v. Sproehnle, *supra*, the court further say: "The law is well settled, that to justify the reformation of a written instrument upon that ground (mistake), the alleged mistake must be one of fact and not of law; secondly, such mistake must be proved by clear and entirely satisfactory evidence; a mere preponderance of evidence is not sufficient; thirdly, the mistake must be mutual, and common to both parties to the instrument;" citing in support of the above, Broadwell v. Broadwell, 1 Gilm. 599; Beebe v. Swartwout, 3 Gilm. 178; Shafer v. Davis, 13 Ill. 395; Sibert v. McAvoy, 15 Ill. 106; Shay v. Pettes, 35 Ill. 360; Wood v. Price, 46 Ill. 440; Emery v. Mohler, 69 Ill. 228; Sawyer v. Hovey, 3 Allen, 331; Andrews v. Essex Ins. Co., 3 Mason, 10; Stockbridge, etc., v. Hudson River Iron Works, 102 Mass. 48; Nevins v. Dunlap, 33 N. Y. 672.

In the Oswald case, above cited, the court lays down three governing rules for such cases as this, the first of which, in regard to the mistake of law, etc., we have sufficiently discussed.  Let us now turn our attention briefly to the other two rules and apply them to the case at bar.

In order to reform a contract on the ground of mistake,

the rule is well established that the evidence of such mistake must not be doubtful in the least, but on the contrary, must be of the strongest possible kind, convincing the mind beyond any doubt. This honorable court is assuredly well aware of the rule, and it will be necessary to cite but few opinions in its support.

In Warrick v. Smith, 36 Ill. App. 619, the court say, *inter alia:* "In cases where it is sought to reform a written instrument upon the ground of a mutual mistake, it is necessary that the complainant should clearly and satisfactorily establish the fact alleged, and relief will not be granted where the evidence is loose, equivocal or contradictory, or it is in its texture open to doubt or opposing presumptions." 1 Story's Eq. Jur., Sec. 157.

The remedy of reformation will not be granted upon a probability or upon a mere preponderance of evidence, but only upon a certainty of error. 2 Pom. Eq. Jur., Sec. 859.

"The stringent rule thus laid down by the text writers is eminently a just and necessary one and should be fairly applied."

"The evidence of the mistake must be clear and convincing, almost irrefragible and the strongest possible." Sapp v. Phelps, 92 Ill. 588; 2 Pom. Eq. Juris., Sec. 843; Story's Eq. Juris., Secs. 153–162; Hamlow v. Sullivant, 11 Ill. App. 423; Hunter v. Bilyeu, 30 Ill. 228; Peck v. Arehart, 95 Ill. 113; Trailor v. Hill, 2 Gilm. 364; McCornack v. Sage, 87 Ill. 484; Schwass v. Hershey, 125 Ill. 653; Ford v. Joyce, 78 N. Y. 618.

Quoting from Schwass v. Hershey, *supra,* the court say: "The presumption is in favor of the written contract, and its terms must control, unless it is clearly and satisfactorily established, not only that the written instrument incorrectly states the agreement, but the contract sought to be substituted must be definitely and clearly shown."

Messrs. GIBBONS, KAVANAGH & O'DONNELL, for appellee.

When a written contract embodies the very words agreed upon by the parties to it, and those words do not bear the

legal construction which the parties intended, this is an error of law. The distinction is aptly and clearly illustrated in the case of Hunt v. Rousmaniere's Administrators, 1 Peters (U. S.), 1. In this case it appears that Hunt and Rousmaniere went to the office to have papers drawn to secure Hunt for a loan that he was making to Rousmaniere on a certain vessel owned by the latter. A bill of sale or mortgage was suggested, and, after some discussion, the conclusion was reached that an irrevocable power of attorney to sell the vessel would be as effectual as a mortgage or bill of sale, and that it would save Hunt the trouble of taking out papers at the Custom House, and of giving bonds, as well as to enable him to escape liability for breaches of law committed by those who were intrusted with the management of the vessel. Rousmaniere died before the power was executed, and, as the power of attorney did not give Hunt any specific lien, as against the creditors of the estate, he filed a bill to have the contract reformed, and a lien created in his favor the same as if he had taken a mortgage or bill of sale; but the relief was denied upon the sole ground that the power of attorney was selected by Hunt instead of the other forms of security offered, and that there was no mistake in drafting the instrument, but the mistake was in selecting a form of instrument the legal effect of which was different from what the parties contemplated. " That the general intention of the parties," says the court, " was to provide a security as effectual as a mortgage on the vessels would be, can admit of no doubt; and, if such had been their agreement, the insufficiency of the instruments to effect that object, which were afterward prepared, would have furnished a ground for the interposition of a court of equity, which the representatives of Rousmaniere could not easily have resisted. But the plaintiff was not satisfied to have the kind of security which he was willing to receive, undetermined, having finally made up his mind, by the advice of counsel, not to accept of a mortgage, or bill of sale in nature of a mortgage. He thought it safest, therefore, to designate the instrument, and, having deliberately done so,

it met the view of both parties, and was so completely incorporated into their agreement, as were the notes of hand for the sum intended to be secured."

This case so clearly illustrates the position we take in the Neeley case, that we may be pardoned for quoting it at such length. It is not the number of cases that carries conviction, but the pertinency and ability of reasoning by which decisions are reached. From the above quotation the following deductions may be drawn: First, that it was the intention of the parties to provide a security as effectual as a mortgage; second, if such were the agreement, the insufficiency of the instruments to effect that object, which were afterward prepared, would have furnished a ground for the interposition of a court of equity, even as against the representatives of one of the parties. But the plaintiff, not being satisfied to have the kind of instrument undetermined; and having deliberately selected an irrevocable power of attorney instead of a mortgage, which was offered, he was without remedy in equity, because there was no question but this was the kind of instrument agreed upon, and there was, therefore, no mistake of fact.

In this same case it is said by the court:

"There are certain principles of equity applicable to this question, which, as general principles, we hold to be incontrovertible. The first is, that where an instrument is drawn and executed, which professes, or is intended to carry into execution an agreement, whether in writing or by parol, previously entered into, but which, by mistake of the draftsman, either as to fact or law, does not fulfill, or which violates the manifest intention of the parties to the agreement, equity will correct the mistake, so as to produce a conformity of the instrument to the agreement. The reason is obvious. The execution of agreements fairly and legally entered into, is one of the peculiar branches of equity jurisdiction; and if the instrument which is intended to execute the agreement be, from any cause, insufficient for that purpose, the agreement remains as much unexecuted as if one of the parties had refused altogether to comply with his engage-

ment; and a court of equity will, in the exercise of its acknowledged jurisdiction, afford relief in the one case as well as in the other, by compelling the delinquent party fully to perform his agreement, according to the terms of it, and to the manifest intention of the parties. So if the mistake exist, not in the instrument which is intended to give effect to the agreement, but in the agreement itself, and is clearly proved to have been the result of ignorance of some material fact, a court of equity will, in general, grant relief, according to the nature of the particular case in which it is sought."

This decision so fully fortifies our contention that the error sought to be corrected is a mistake of fact, that it may be deemed superfluous to controvert the statement made by the learned counsel to the effect that a court of equity will never lend its aid to relieve against a mistake of law. That such seems to be the rule stated by many courts, need not be questioned, but there are many exceptions to that rule, and the rule itself, if it ever did exist, or was ever enforced to the extent stated in some of the cases and by text writers, seems to have been modified and its severity relaxed by recent decisions. In this respect, as in all others, it is the aim of courts of equity to compel men to do that which they intended should be done, when it would be contrary to good conscience to permit them to evade it.

Mr. Justice Gary. The appellee filed a bill to reform a contract in these words:

"Contract and agreement entered into this 14th day of April, A. D. 1887, between C. H. Bunker and C. S. Wolsey, parties of the first part, and C. H. Neeley, party of the second part, all of the City of Chicago, County of Cook and State of Illinois.

"Whereas, the parties of the first part have this day sold and delivered to the party of the second part a certain sixty-five (65) shares of stock of the Abbott Buggy Co., a corporation doing business in the City of Chicago and State of Illinois, par value of said stock being one hundred (100) dollars each share.

"Now witnesseth, for and in consideration of one dollar in hand paid, the receipt whereof is hereby acknowledged, and such purchase of said stock by said C. H. Neeley, the said C. H. Bunker and C. S. Wolsey, parties of the first part, together or individually, agree to pay said C. H. Neeley fifteen per cent interest per annum, on the sum of sixty-five hundred dollars ($6,500), said interest to commence from the first day of November, A. D. 1887, and payable annually, said agreement to continue for three years.

" It is understood and agreed by all the parties to this contract that any and all dividends that may be declared during the three years above stated by the Abbott Buggy Co. on said stock purchased by said C. H. Neeley, shall go to said C. H. Bunker and C. S. Wolsey, parties of the first part.

" It is further agreed and understood by all the parties to this contract, namely, C. H. Bunker and C. S. Wolsey, parties of the first part, and C. H. Neeley of the second part, that at the expiration of said term, namely, three (3) years from November first, A. D. 1887, the said C. H. Neeley shall resign this agreement, and shall retain the said sixty-five (65) shares of stock, if he so elect; or the said C. H. Bunker and C. S. Wolsey, parties of the first part, agree to purchase the said sixty-five (65) shares of stock at par value of one hundred (100) dollars per share, if the said C. H. Neeley shall so elect."

He asked for the relief which the court gave him by a decree, which substituted for the second paragraph of the contract these words:

"Now witnesseth, for and in consideration of one dollar in hand paid, the receipt whereof is hereby acknowledged, and such purchase of said stock by said C. H. Neeley, the said C. H. Bunker and C. S. Wolsey, parties of the first part, together or individually, agree to guarantee and pay to said C. H. Neeley a sum equal to fifteen per cent per annum as a dividend on the par value on said sixty-five shares of stock, in lieu of any and all dividends to be declared or to accrue on said stock, said payments to commence from the first day of November, A. D. 1887, and payable annually, said agreement to continue for three years."

Wolsey v. Neeley.

There are two reasons why that decree is erroneous. First, the appellee did not need it; and second, if he did, he was not entitled to it.

As to the first reason: The contract as written is the same in legal effect as the court has made it. In either form, the appellants, for the dividends, which might be any per cent, agree to pay to the appellee fifteen per cent. And in either form, this may be a cover for usury, but it is not usury on the face of the paper. The real transaction may be shown by extrinsic evidence. Earll v. Mitchell, 22 Ill. 530; McGill v. Ware, 4 Scam. 21; Davis v. Rider, 53 Ill. 416.

As to the second reason: The contract was prepared by a Mr. Ackers, read over by both parties, and signed, without any mistake as to the words of it; nor was there any subject-matter which had been agreed upon between the parties left out by the writer, nor any inserted which had not been agreed upon.

The whole mistake, if any there were, was as to the meaning of the words used to express the agreement of the parties upon the subject to which the words relate.

Public policy forbids any change upon parol testimony. Parties must be at liberty to put their engagements into such form that they shall not thereafter be subject to either failing or unveracious memory of witnesses. We refer as to the law on the subject only to Hair v. Johnson, 35 Ill. App. 562, and Fowler v. Black, 136 Ill. 363. What application Locke v. Towler, 41 Ill. App. 66, may have to this case, we do not consider.

The decree is reversed and the cause remanded with directions to the Circuit Court to dismiss the bill.

*Reversed and remanded.*