CATHERINE E. RYDER *vs.* JAMES J. RYDER *et als.*

Equity will reform a written instrument to correct a mistake where the mistake consists merely in the use of terms which do not carry into effect the intention of the parties.

Hence, where there was an agreement for a loan to be secured by a mortgage of the entire personal property of a firm, including its printing presses and other machines, cameras, lenses and type, but in the description of the property in the mortgage the words used were "fixtures and furniture," which are not, as the parties supposed, broad enough to include these articles, the mistake, though in one sense a mistake of law, will be corrected in equity.

Pub. Stat. R. I. cap. 176, § 9, provides that no mortgage of personal property shall be valid against any person other than the parties to it unless possession of the mortgaged property be taken and .retained by the mortgagee, or unless the mortgage be recorded.

A partnership gave a chattel mortgage which was not recorded and which by a mistake of the parties did not include property intended to be conveyed. Subsequently, in a suit for the dissolution of the partnership, a receiver was appointed on motion of intervening creditors. The mortgagee filed a bill to reform the mortgage.

*Held*, that the receiver took the property of the firm subject to the mortgagee's equity to have the mortgage reformed.

In the absence of fraud or statutory regulations, a receiver, like a voluntary assignee for the benefit of creditors, or assignee in insolvency or bankruptcy, succeeds only to the debtor's rights and takes the property subject to the claims, liens and equities which would affect the debtor if he himself were asserting his interest in the property.

BILL IN EQUITY to reform a mortgage. Heard on pleadings and proofs.

*September* 19, 1895. MATTESON, C. J. This is a bill to reform a mortgage of personal property. The J. J. Ryder Co., a partnership, executed and delivered to the complainant a mortgage to secure the payment of a loan of $4,600, of which a balance of $2,500 with interest from March 23, 1893, remains due and unpaid. By the agreement between the firm and the complainant, made when the loan was negotiated, the complainant was to have, as security for the loan, a mortgage covering the entire property of the company, including its printing presses and other machines, cameras, lenses and type. The mortgage as drawn, however, was not broad enough to include these articles of property, the words "fixtures and furniture" used in the

description of the property conveyed not being as the parties supposed, sufficient for that purpose.

It was contended, in behalf of the receiver, that the mistake, being as to the legal effect of the words "fixtures and furniture," was a mistake of law and not of fact, and therefore a mistake not relievable in equity. There are cases to support this contention. Among them may be cited *Sibert* v. *McAvoy*, 15 Ill. 106, 109; *Gordere* v. *Downing*, 18 Ill. 492, 493; *Wood* v. *Price*, 46 Ill. 439, 441; *Woolsey* v. *Neeley*, 46 Ill. App. 387, 395; *Fowler* v. *Black*, 136 Ill. 363, 376; *Allen* v. *Anderson*, 44 Ind. 395; *Heavenridge* v. *Mondy*, 49 Ind. 434, 439; *Easter* v. *Severin*, 78 Ind. 540, 546; *Rector* v. *Collins*, 46 Ark. 167, 175–177. We are of the opinion, however, that it will be found on examination that the great preponderance of authorities, as well as the better reason, sustain the view that where the mistake of law is not as to the scope or effect of the contract, or as to the nature of the instrument to effectuate the contract, or, in other words, one which enters into the contract itself, but is merely a mistake in regard to the legal effect of the terms employed in reducing the contract to writing, equity will grant relief. In *Hunt* v. *Rousmaniere*, 1 Pet. 15, it is said: "Where an instrument is drawn and executed, which professes, or was intended, to carry into execution an agreement, whether in writing or by parole, previously entered into, but which by mistake of the draughtsman, either as to the fact or law, does not fulfill, or which violates the manifest intention of the parties to the agreement, equity will correct the mistake so as to produce a conformity of the instrument to the agreement. The reason is obvious. The execution of agreements, if fairly and legally entered into, is one of the peculiar branches of equity jurisdiction; and if the instrument intended to execute the agreement be, from any cause, insufficient for the purpose, the agreement remains as much unexecuted as if one of the parties had refused, altogether, to comply with his engagement; and a court of equity will, in the exercise of its acknowledged jurisdiction, afford relief in the one case, as well as in the other, by compelling the

delinquent party fully to perform his agreement according to the terms of it, and to the manifest intention of the parties." See also, *Oliver* v. *The Mutual Ins. Co.*, 2 Curtis, 277, 298, 299. In *Abraham* v. *North German Ins. Co.*, 40 Fed. Rep. 717, 722, Shiras, J., explains the difference between the kind of mistakes relievable in equity and those which it will not correct. He says: "In entering into contracts, parties are deemed to know the principles established by law, and contracts are construed with reference to the law applicable to the subject matter of the contract; and, therefore, in that sense, the law as it actually is enters into and forms part of the contract that the parties make. If, however, in a given case, the parties actually mistake or misunderstand the principle of law applicable to the subject matter of the contract, and reach an agreement relying on this mistake of the law, there is no ground upon which a court of equity can reform the contract. The court cannot know whether the parties, if they had correctly understood the law, would have entered into any contract on the subject, or what terms they might have reached touching the same. While the court might, therefore, be entirely satisfied that the parties, had they in fact understood the principles of law applicable to the case, would not have made the contract which they did make, the court cannot know what contract they would have made, if any; and, therefore, in such case, the court cannot reform the contract, although it might be justified in setting it aside. When, however, the mistake lies, not in a misunderstanding of the principles of law as controlling the subject of the contract, or the rights of the parties connected therewith, but merely in the terms proper to be used in defining the actual contract of the parties, such a mistake, though in one sense a mistake of law, is one that a court of equity will correct." Among other authorities which may be cited, as holding or recognizing the same doctrine, are the following: *Snell* v. *The Ins. Co.*, 98 U. S. 85, 92; *Canedy* v. *Marcy*, 13 Gray, 373, 377; *Goode* v. *Riley*, 153 Mass. 585; *Park Bros. & Co.* v. *The Blodgett & Clapp Co.*, 64 Conn. 28, 35–38; *Kennard* v. *George*, 44 N. H. 440, 446;

*Eastman* v. *Provident Mutual Relief Association*, 65 N. H. 176 ; *Pitcher* v. *Hennessey*, 48 N. Y., 415, 424 ; *Trusdell* v. *Lehman*, 47 N. J. Eq. 218, 222 ; *Clayton* v. *Freet,* 10 Ohio St. 544, 545 ; *Cook* v. *Husbands*, 11 Md. 492, 510, 511 ; *Benson* v. *Markoe*, 37 Minn. 30, 33–36 ; 2 Pom. Eq. Jur. §§ 843, 845 ; 2 Beach, Mod. Eq. Jur. § 540.

It has been suggested that, as to the property not included in the mortgage as originally drawn, but sought to be included in it by its reformation, the mortgage is an unrecorded mortgage ; and the question has been raised whether, in view of the provision of Pub. Stat. R. I. cap. 176, § 9, that no mortgage of personal property shall be valid against any person other than the parties to it, unless possession of the mortgaged property be taken and retained by the mortgagee, or *unless the mortgage be recorded* in the office of the town clerk where the mortgagor resides, the mortgage can be reformed so as to make it a valid mortgage as against the receiver. We have reached the conclusion that the mortgage as reformed will be valid as against the receiver. He was appointed receiver in the suit of *Kelley* v. *Ryder*, which was a bill brought for the dissolution of the partnership of the J. J. Ryder Co., on motion of creditors who had been allowed to intervene. As such receiver he took the property of the partnership, subject to the equity of the complainant to have the mortgage reformed. We do not see that he occupies any better position, with reference to the property to be included in the mortgage as reformed, than that of an assignee under a general assignment for the benefit of creditors in respect to property conveyed by an unrecorded mortgage. If this be so, the question is the same which was determined in *Wilson* v. *Esten*, 14 R. I. 621. In this case a mortgage had been given to secure a loan of money to enable the mortgagor to start in business. The mortgage was given May 15, 1883, but was not recorded. The mortgagor made an assignment for the benefit of creditors January 14, 1884. The property covered by the mortgage was sold by the assignee, who paid the proceeds into the registry of the court. The fund was claimed by the general creditors of the mortgagor, and also

by the mortgagee.   It was contended, in behalf of the general creditors, that the neglect to have the mortgage recorded operated as a fraud on them because, in consequence of it they gave credit to the mortgagor which otherwise they would not have given, and that under the statute the mortgage, not having been recorded, was void as to them, and they were therefore entitled to the fund.   The court found, on the testimony, that the neglect to record the mortgage was not from any fraudulent motive, and held that the statute was to receive a reasonable construction ; that, as the mortgage was good between the parties to it, and the assignee succeeded only to the rights of the mortgagor, he took the property subject to the lien of the mortgage, and consequently that the mortgagee was entitled to the fund.   In that case the assignee was a voluntary assignee; but we understand it to be the established doctrine, both in England and in this country, that assignees in insolvency or bankruptcy, whose rights as representing the general creditors are certainly as great as those of a receiver of a partnership, in the absence of fraud and of statutory regulations, take only the debtor's rights, and consequently are affected with all claims, liens and equities, which would affect the debtor if he himself were asserting his interest in the property.   *Mitford* v. *Mitford*, 9 Ves. 87 ; *Sherrington* v. *Yates*, 12 M. & W. 855 ; *Brown* v. *Heathcote*, 1 Atk. 160 ; *Winsor* v. *McLellan*, 2 Story, 492 ; *Fletcher* v. *Morey*, 2 Story, 555 ; *Mitchell* v. *Winslow*, 2 Story, 630 ; *In re Griffiths*, 1 Lowell's Decisions, 431 ; *In re Dow*, 6 N. B. R. 10 ; *Coggeshall* v. *Potter*, 1 Holmes, 75 ; *Johnson* v *Patterson*, 2 Woods, 443 ; *Goddard* v. *Weaver*, 1 Woods, 257, 260 ; *In re Collins*, 12 N. B. R. 379 ; *Platt* v. *Preston*, 3 Fed. Rep. 394 ; *Yealman* v. *Savings Institution*, 95 U. S. 764 ; *Stewart* v. *Platt*, 101 U. S. 731, 739 ; *Hauselt* v. *Harrison*, 105 U. S. 401, 406 ; *Adams* v. *Collier*, 122 U. S. 382 ; *Brown* v. *Brabb*, 67 Mich. 17, 22–32 ; Jones on Chattel Mortgages, § 241.

A decree may be entered for the reformation of the mortgage according to the prayer of the bill.

*George J. West*, for complainant.

*Cyrus M. Van Slyck, Charles C. Mumford & Edmund S. Hopkins*, for the receiver.

*John F. Lonsdale & Bernard J. Padien*, for respondent, Thomas J. Kelley.