DECISION
Before the Court is a dispute over certain proceeds under life insurance policies issued on June 12, 1987 to Superior Industries, Inc. ("Superior") on the life of Frederick Dark. The heirs and/or the Estate of Frederick Dark ("Dark's Estate") have made claim against said proceeds.
The receiver of Superior and the plaintiffs have objected.
Facts and Travel
Superior was incorporated in Rhode Island on April 1, 1985. Its original shareholders, Frederick Dark ("Dark") and Frank DeFruscio ("DeFruscio"), each owned 50% of the issued and outstanding capital stock of the corporation. Dark was the President and Secretary of Superior, while DeFruscio was its Vice President and Treasurer. On or about December 5, 1988, an "Agreement" was entered into by and among Dark and DeFruscio, as stockholders, and Superior. According to the Agreement, its purpose was
 (a) to require that the shares of the Stockholders in the Corporation be frozen and not saleable without agreement of all stockholders, (b) to provide for purchase by the Corporation of the stock interest of a deceased Stockholder, and (c) to provide the funds necessary to purchase such interest.
To assist Superior in purchasing the stock of a deceased stockholder, the Agreement provided that, "the Corporation has applied to the Aetna Life Insurance and Annuity Company for issuance [of two $100,000 life insurance policies for Frederick Dark.]" The Agreement was signed by Dark and DeFruscio in their capacities as stockholders, and by Dark in his capacity as Superior's President and Secretary. The policies in question were issued by Aetna Life Insurance and Annuity Company ("Aetna") and effective as of June 12, 1987. The policies were subsequently purchased from Aetna by Lincoln National Life Insurance Company ("Lincoln").
The year 1998 proved to be a difficult year for Superior. Dark died in August of 1998 and Superior was having financial problems. Karen Ann DeFruscio, DeFruscio's daughter, had become a fifty percent (50%) shareholder through the transfer of DeFruscio's stock to her during his life. Karen Ann and Cecelia DeFruscio, DeFruscio's surviving spouse, allegedly had to withdraw money from personal savings to pay Superior's liabilities. Superior's financial situation, however, did not improve.
By approximately March 31, 1998, before Dark's death, Superior's total current and long-term liabilities exceeded its assets by roughly $48,000. Recognizing Superior's inability to meet its current obligations, Karen Ann and Cecelia DeFruscio ("Plaintiffs") petitioned Superior into receivership on March 30, 1999. In the petition, the plaintiffs alleged that they were creditors of Superior. As evidence, the plaintiffs submitted a copy of a $110,000 promissory note from Superior to Frank and Karen Ann DeFruscio dated October 27, 1997. The note was signed by Superior's President at the time, Frederick Dark. Plaintiffs also included a copy of a note from Superior to Karen Ann and Cecelia DeFruscio in the amount of $11,438.49 dated October 27, 1998. That note was signed by Karen Ann DeFruscio, Superior's then President. An Order appointing a temporary receiver entered on March 31, 1999, and the receiver herein was appointed as permanent receiver on April 21, 1999. Sometime after the death of Dark, both Karen Ann DeFruscio, acting on behalf of Superior, and the Estate filed claims with Lincoln for the proceeds of the life insurance policy Superior held on the life of Frederick Dark. Karen Ann DeFruscio, as President of Superior, claimed that the insurance proceeds should be paid to Superior under the terms of the policy. Dark's Estate filed a claim alleging that the proceeds from the policy should be paid directly to it. On July 8, 1999, this Court ordered the insurance proceeds to be paid to the receiver to be held by him in an interest-bearing escrow account pending further determination regarding the party or parties entitled to such funds.[1] The issue currently before the Court is the determination of the proper party or parties entitled to the insurance proceeds held in escrow.
Insurance Proceeds
Both the receiver and the plaintiffs object to the Estate's claim for the insurance proceeds.
Their arguments are essentially the same. First, they argue that the Shareholder Agreement terminated according to its own terms. Second, they aver that any payment of the insurance proceeds to the Estate would constitute a fraudulent transfer under R.I.G.L. §§ 6-16-4
and 5. Finally, they urge upon the Court that the claim of Dark's Estate is subordinate to the claims of the other creditors and the insider general claims of the plaintiffs.
Dark's Estate argues that the proceeds of the life insurance policies are exempt from being applied to the debts of Superior under R.I.G.L. § 27-4-11, whether the Agreement is enforceable or not. Alternatively, the Estate contends that the Agreement should in fact be enforced. Moreover, Dark's Estate claims that in the event that this Court finds the proceeds to be includable in the receivership estate, it is entitled to an equitable remedy by which it may be restored to the position it held at the time the Agreement was executed. Finally, the Estate claims that the Agreement stands equal or superior to the claims of other unsecured creditors, including the claims of the plaintiffs under the aforementioned promissory notes.
The Agreement
A proper determination of the party or parties entitled to the insurance proceeds held in escrow must begin with a review of the Agreement entered into by Dark and DeFruscio on December 5, 1988 and a review of the insurance policies issued on the life of Dark. The initial inquiry is whether the Agreement is still effective and binding upon the parties in question. The Agreement itself specifically states in Article VII the situations under which it will terminate. It states "[t]his Agreement shall terminate upon the dissolution, receivership, insolvency or bankruptcy of the Corporation."
The receiver and the plaintiffs have both argued that the Agreement terminated when Superior became insolvent not later than March 31, 1998. The Rhode Island legislature has stated at R.I.G.L. § 6-16-2 (Uniform Fraudulent Transfer Act) that a debtor is insolvent "if the sum of the debtor's debt is greater than all of the debtor's assets at a fair valuation."[2] Insolvent has also been defined statutorily as the "inability of a corporation to pay its debts as they become due in the usual course of business." R.I.G.L. § 7-1.1-2(14) (Rhode Island Business Corporation Act).
A review of the facts of the present case and Superior's Unaudited Balance Sheet reveals that as of March 31, 1998, Superior had an accumulated deficit of approximately $50,235.72, an accrued tax amount of $14,914.76, and an accrued payroll of $7,850.97. Superior's balance sheet as of March 31, 1998 also showed Superior's current, fixed and other assets totaling $70,478.78, while its current liabilities were $91,087.85 and its long-term liabilities totaled approximately $27,626.65. It is clear from the facts and the evidence that Superior's debts were greater than its assets and that it was having difficulty paying its debts (namely tax and payroll liabilities) as they became due as of March 31, 1998.
It is safe to say, therefore, that Superior was insolvent by at least that date.
Since Superior was insolvent as of March 31, 1998, the Agreement terminated under the clear, unambiguous and express language of the Agreement itself. It is well-settled by our Supreme Court that "[i]n determining whether a contract is clear and unambiguous, the document must be viewed in its entirety and its language be given its plain, ordinary and usual meaning." Rotelli v. Catanzaro, 686 A.2d 91, 94 (R.I. 1996) (quoting Paradis v. Greater Providence Deposit Corp.,651 A.2d 738, 741 (R.I. 1994)). The Supreme Court has "consistently held that a contract is ambiguous only when it is reasonably and clearly susceptible of more than one interpretation." Id. (quoting W.P. Associates v. Forcier, Inc., 637 A.2d 353, 356 (R.I. 1994)). The Supreme Court has also stated that when a contract is clear in its terms, the "construction of the contract was for the court" and not a question for the jury. Butler Exch. Co. v. Fess Rotary Oil Burner Co., 125 A. 360, 362 (R.I. 1924) (quoting Richmond v. N.Y., N.H. H. R.R. Co. 26 R.I. 225 (1904). A review of the entire Agreement in the present case and Superior's financial situation shows that the Agreement terminated upon the insolvency of Superior as of at least March 31, 1998.
The terms of the Agreement, therefore, are no longer binding upon the parties once Superior became insolvent. In essence, the termination language found in Article VII of the Agreement was a condition subsequent. "A condition subsequent has been defined as a future event upon the happening of which the agreement or obligations of the parties would be no longer binding." 13 Williston on Contracts § 38:9 (Lord 4th ed. 2000). Although the Agreement stated that "[u]pon the death of the Stockholder, Frederick Dark, his estate or his successor-in-interest by reason of form of ownership shall sell and the Corporation shall buy all his shares of capital stock in the Corporation . . .," and provided funds for that purchase through life insurance policies, the terms are not enforceable because Superior became insolvent prior to Dark's death.[3] The Estate is therefore not entitled to the insurance proceeds under the terms of the terminated Agreement.
The Insurance Policy
Also at issue is whether the Estate is entitled to the proceeds of the insurance policies under the terms of the policies themselves. The Rhode Island Supreme Court has noted that it "applies the same rules when construing insurance policies as it does when construing contracts." Employers Mut. Cas. Co. v. Pires, 723 A.2d 295, 298 (R.I. 1999) (quoting Martinelli v. Travelers Insurance Companies,687 A.2d 443, 445 (R.I. 1996)). A Court "will not depart from the literal language of the policy absent a finding that the policy is ambiguous." Id. "To determine whether a policy is ambiguous, we read the policy in its entirety, giving each word its plain, ordinary, and usual meaning." Id.
In the present case, the insurance policies named Superior as the policy owner and the beneficiary. Superior paid all the premiums due under the policies. Furthermore, there are no provisions in the policies, and no persuasive evidence of intent has been offered, that provide for the insurance proceeds to be paid to any specific trust in the name of the heirs or the Estate. See In re Eljay Jrs., Inc.,106 B.R. 775, 786 (Bkrtcy. S.D.N.Y. 1989) ("there must be either an explicit declaration of trust or circumstances showing unequivocally, and admitting of no other intention, than that a trust was intended to be created.") In fact, there are no provisions that provide for payment of any proceeds outside Superior Industries.
Although the policies are unambiguous, and the intent of the parties seem clear, Dark's Estate suggests that the policies should not be read in a vacuum. They assert that, when read together with the Agreement, the intent of the parties was to make the insurance policies payable to Dark's Estate through the purchase of stock, such that the proceeds are exempt from being applied to Superior's debts under R.I.G.L. § 27-4-11.[4] The Agreement itself, however, stated that the "Corporation shall be owner, holder and beneficiary of these policies and shall pay the premiums therefor." The Agreement also stated that "[a]ll life insurance policies on the life of its Stockholder, Frederick Dark, purchased pursuant to this Agreement shall be general assets of the Corporation." (emphasis added) Even if the Agreement had provided that Dark's Estate was the `lawful beneficiary' of the policies, or stated that the proceeds were payable to them, as R.I.G.L. § 27-4-11 provides, the Agreement terminated prior to Dark's death due to Superior's insolvency. As a result, there is simply a factual void of any intention on the part of either Dark or Superior Industries, Inc. for the proceeds of the insurance policies to be paid to anyone but Superior.
Furthermore, although our Supreme Court has noted that a "contract to purchase its own stock is a valid obligation," it has cautioned that it "is enforceable when such purchase will not impair the capital of the corporation to the detriment of it stockholders and creditors." Cleveland v. Jencks Mfg. Co., 171 A. 917, 918 (R.I. 1934). The Court then stated:
 It is obvious that an insolvent corporation would not possess assets sufficient to purchase shares of its own stock without impairing its capital. It is a fundamental principle of law that the capital of a corporation is a trust fund for its creditors and must not be depleted by allowing a claim arising through an agreement to purchase its own stock. And this principle is affected by neither the good faith of the parties to the transaction nor the fact that the corporation was solvent at the time the obligation arose. Id., See also, R.I.G.L. § 7-1.1-5(f).[5]
It follows, then, that the insurance proceeds should be disbursed to the named beneficiary under the policies — Superior, or in this case, to the receiver who has succeeded to Superior's rights. See Vitterito v. Sportsman's Lodge Restaurant, Inc., 228 A.2d 119, 124-25, 102 R.I. 72, 80 (R.I. 1967) (quoting Ryder v. Ryder,32 A. 919, 19 R.I. 188 (R.I. 1895)(". . . a receiver . . . succeeds only to the debtor's rights, and takes the property subject to the claims, liens and equities which would effect the debtor if he himself were asserting his interest in the property."))
 Conclusion
For the foregoing reasons, this Court finds that the proceeds of the life insurance policies in question are general assets of Superior Industries, Inc. and included in the receivership estate for the benefit of its creditors. As a result, the Estate's claim for direct entitlement to the insurance proceeds must be denied; and, any claims of the heirs and/or the Estate of Frederick Dark, as 50% equity shareholders in Superior, must be subordinate to the claims of Superior's creditors and receivership costs. See Sullivan v. Assalone, 1997 WL 839897 (R.I.Super. 1997) (quoting Olney v. The Conanicut Land Co., 18 A. 181 (R.I. 1889)(noting that "where the corporation becomes insolvent, . . . directors should be regarded as trustees of the creditors to whom the property of the corporation must go.")
The receiver shall present an order consistent with the provisions of this decision.
[1] The amount of insurance proceeds at the time this Court ordered the insurance proceeds to be turned over to the receiver to be held in escrow was $217,163.98.
[2] In pertinent part, R.I.G.L. § 6-16-2 states "Insolvency. — (a) A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation. (b) A debtor who is generally not paying his or her debts as they become due is presumed to be insolvent. . . ."
[3] Frederick Dark died in August of 1998, approximately five months after Superior became insolvent. No evidence has been offered that shows any attempt or intent by Superior to change the policy terms for the benefit of Dark's heirs or estate.
[4] R.I.G.L. § 27-4-11 provides, in part:
 Rights of beneficiaries to proceeds of policy as against creditors — Premiums paid in fraud of creditors. If a policy of insurance, whether heretofore or hereafter issued, is effected by any person on that person's own life or on another life in favor of a person other than himself or herself, or, except in cases of transfer with intent to defraud creditors, if a policy of life insurance is assigned or in any way made payable to any person, the lawful beneficiary or assignee thereof, other than the insured or the person affecting that insurance or the executors or administrators of that insured or the person so effecting that insurance, shall be entitled to its proceeds and avails against the creditors and representatives of the insured and of the person effecting the insurance, whether or not the right to change the beneficiary is reserved or permitted, and whether or not the policy is made payable to the person whose life is insured if the beneficiary or assignee shall predecease that person; provided, that, subject to the statute of limitations, the amount of any premiums for that insurance paid with intent to defraud creditors, with interest thereon, shall enure to their benefit from the proceeds of the policy. . . .
[5] R.I.G.L. § 7-1.1-5(f) provides that "No purchase of or payment for its [a corporation's] own shares shall be made at a time when the corporation is insolvent or when the purchase or payment would make it insolvent."