## BATES v. TAYLOR.

1. A voluntary association holding property is not absorbed nor destroyed by accepting a charter; and therefore may still hold its property after the expiration of this charter.

2. Where a party subscribes land and money for school purposes, his subscription is a contract for valuable consideration with the other subscribers, and is in the nature of a dedication to specified public purposes of the money and land subscribed, and may be enforced in law, although no deed was executed.

3. The verdict of the jury in this case established the fact that the land was contributed to the society without reference to a prospective charter; but even if it were a simple gift, it might be enforced, it would seem, in favor of an unincorporated voluntary association—more particularly where the object of the trust is charitable, such as a trust for the maintenance of schools.

Before PRESSLEY, J., Richland, October, 1886.

This was an action by Clara H. Bates against Jesse H. Taylor, The Palmetto Society, and others, to recover a parcel of land. The opinion sufficiently states the case.

*Mr. F. W. McMaster*, for appellant.

*Mr. Allen J. Green*, contra.

April 17, 1888. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. This action was for the recovery of real estate—a parcel of thirty-seven acres, hereinafter more particularly described. Action was commenced February 20, 1886. It appears that in September, 1847, more than forty years ago, certain citizens of that part of Richland County, known as "The

Fork," met to devise means for the erection of an academy to educate their children in the neighborhood of Good Hope.    Subscriptions were raised to the amount of $2,525.    Among the subscribers was John Bates, who subscribed $500 in cash, and thirty-seven acres of land.    On December 2, 1847, an association or society was formed under the name and style of the "Palmetto Society."    Officers were elected, of whom John Bates was one, and the "Palmetto Academy" and Teachers' Home were built on the aforesaid parcel of land.    On July 2, 1847, at a meeting of the society a resolution was adopted authorizing an application for a charter, which was afterwards obtained, to continue for fourteen years, under the name of the "Palmetto Society in Columbia for the Dissemination of Learning," and was accepted July 28, 1849.    The parcel of land known as the Palmetto Academy lot (thirty-seven acres) was marked off by a blazed line, and the buildings erected thereon have been used and held as a school ever since.    It seems that during the war the regular meetings of the society or incorporation were not held, but a school of some character was kept there all the while.    After the war the premises were used for a time as a public school under the general law, and in 1883 application was made and the charter revived.

John Bates, during his life, never claimed the academy lot, but respected the lines.    He died soon after the war (December 25, 1866), and his executors, in running his lands, left out the academy parcel, running around the old lines.    His lands were sold by order of the court (1885) and purchased by the plaintiff, and she now brings this action, alleging that the title to the said lot had reverted to John Bates in his life-time, and passed to her under the purchase aforesaid.    "The Palmetto Society," Jesse H. Taylor, and C. W. Rawlinson answered, first denying each and all of the allegations of the complaint; and, second, alleging that neither the plaintiff nor her ancestor or grantor was seized or possessed of the premises in question within ten years before the commencement of the suit, but that the defendants, and those under whom they claim, have been in adverse and exclusive possession for more than ten years, &c.

There was much testimony.    The plaintiff made certain

requests to charge, some of which were charged in modified form and some refused. But it will not be necessary to advert to any except those which will be referred to in the exceptions. Under the charge of the judge, which is in the Brief, the jury found a verdict for the defendants, and the plaintiff appeals upon the following grounds:

I. That his honor was requested to charge: "That under the laws of this State, at the expiration of a charter of the like character of the one involved in this action, the real estate held by said corporation immediately reverted to the grantor and his heirs," which request his honor refused and charged as follows: "This would be the law if given to the corporation, but it is not the law if contributed to an association not incorporated for valuable consideration."

II. That his honor was requested to charge: "If the jury believe that the land sued for in this action was given by John Bates to the 'Palmetto Society' as a gift, then, at the expiration of the charter in 1862, the land reverted to John Bates and his heirs." Which request his honor refused and charged as follows: "That would be so if given to a corporation, but would not be so if given to a society for a public purpose, no charter at the time being contemplated."

III. That his honor erred in his charge: "That the defendant, 'The Palmetto Society,' could hold the land in dispute as an unincorporated association, and that said society did not hold said land as an incorporation."

IV. That his honor erred in his charge: "That the land in dispute was given by John Bates to the 'Palmetto Society,' not as a gift, but for a valuable consideration, and therefore the property did not revert at the death of the corporation to John Bates."

V. That his honor erred in charging: "That when the land in dispute was given to the defendant, the Palmetto Society, no charter was in contemplation, and said society took the land, not as a corporation, but as an unincorporated association."

VI. That his honor erred in charging: "That the land in dispute was given for a valuable consideration to an unincorporated association, and that association being afterwards incorporated,

the land was held in abeyance during the life of said corporation, and at the death of said corporation the land herein did not revert to the grantor, John Bates, but reverted to the unincorporated association."

VII. That his honor erred in charging: "That the written document entered into between the original members of the Palmetto Society was a mutual contract for valuable consideration for the constructing of a public work, and the unincorporated society held title to the land."

The exceptions in different form complain that the judge committed error in charging that, as matter of fact, the contribution of the land was made to an unincorporated society for a public purpose, without reference to the charter which that society afterwards obtained, and was allowed to expire, amidst the confusion of the war (1862), and that, proceeding upon this assumption, he committed further error of law in holding that the subscription was for a valuable consideration, and that the unincorporated society could accept and hold the land, either individually or as a body, without a charter, so as to divest the donor, John Bates, of title to the same.

We do not understand that the judge assumed that, as matter of fact, the subscription of the land and money was made to the society, without reference to the charter subsequently acquired, but that he left that question to the jury. He said: "Now, while I have charged you that if Mr. Bates had given that land to a corporation with a charter existing at the time, or even proved to be in contemplation at the time he gave it, at the expiration of that charter, if they didn't have it renewed, the land would revert to him; but until I get further light I am bound to charge you if, under that agreement, he contributed to an asssociation or enterprise for the purpose of constructing a public work to be used as an academy—if he gave that land and money under these circumstances, and the association existed under these circumstances, and proceeded to build upon the property, their applying for and accepting a charter would neither destroy the association nor the rights of the association; it would simply put the association in abeyance." Thus the fact was submitted to the jury; if they so found, then the law applicable was as

stated. In this view we concur with the judge. We do not perceive how the subsequent acceptance of a charter, or its being allowed to expire, could absorb the association and work a radical change in the original relations and rights of the parties.

Assuming, then, that the fact was so found by the jury, it is still further contended that it was error of law to hold that the written agreement of John Bates to give cash and this land "to Dr. D. W. Ray for the purpose of building a male and female academy in the neighborhood of Good Hope," was a contract (not a gift) for valuable consideration, which had the effect of divesting the donor, John Bates, of his title to the land, and transferring it to the members of the "Palmetto Society." The view seems to be that the ruling was error, for the reason that no private advantage was intended for the members of the society individually, but only the use of the lands was given to the society as a body for certain specified purposes—leaving the title or right of reverter still in the donor. We cannot accept this view. We agree with the judge that it was a mutual contract between the parties for valuable consideration, or in the nature of a dedication of the land and money for certain specified public purposes, and could have been enforced in law against John Bates in his life-time. See *Ramey, Treasurer,* v. *W. C. Anderson,* 1 *McMull.,* 300.

But, as we understand, it is still further contended that it was error of law to hold that the legal title ever passed out of John Bates—that the title must be somewhere—that Bates never formally conveyed it, and the individual members of the society could not take and hold it in succession, or execute the trusts declared and connected with it, without a charter; and that, therefore, we must assume that the subscription or dedication of the land was only made with reference to the charter to be afterwards acquired; that it must be considered that the charter was in existence at the time it was made, and, therefore, upon the expiration of the charter the land reverted to the original donor, John Bates. But the conclusive answer to this is, that we have already seen that, under the charge of the judge, the jury found the fact that it was contributed to the society without reference to the prospective charter, and even before it was contemplated.

Besides, we are not prepared to admit that the law will not afford the means of enforcing a trust, even where it is a simple gift, and reposed in an unincorporated voluntary association of individuals, more particularly where the object of the trust is charitable in its character, which, in the judicial sense, includes the establishment and maintenance of schools and colleges. See *Gibson* v. *McCall*, 1 *Rich.*, 176; *Attorney General* v. *Jolly*, 1 *Rich. Eq.*, 100; and *Vidal* v. *Girard's Executors*, 2 *How.*, 127, especially as reported with notes and authorities in "Leading Cases in the American Law of Real Property" by Sharswood & Budd, vol. 3, page 257.

In our own case of *Jolly*, *supra*, Chancellor Harper, in delivering the unanimous judgment of the old Court of Errors, reversing his own judgment on the Circuit, said: "But the whole subject was considered (*Vidal* v. *Girard's Executors*) and the opinion of the court was plainly intended to overrule the case of the *Baptist Association* v. *Hart's Executors*, 4 *Wheat.*, 7.   *   *   *   I understand these principles to be settled by the decision referrred to. If there be a bequest to a society by that name, the individuals composing it, who may be identified by evidence, take as natural persons in the same manner as if each had been particularly named, and that if it be upon a lawful trust, they will be compelled to execute it," &c.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.