164     CASES IN CHANCERY, 1918–1919.

Hoover Steel Ball Co. *v.* Schaefer Ball Bear. Co.   *90 N. J. Eq.*

HOOVER STEEL BALL COMPANY, a corporation.

*v.*

SCHAEFER BALL BEARINGS COMPANY, a corporation.

[Decided April 5th, 1919.]

1. A contract made by a corporation to repurchase its stock at the option of the purchaser, as a condition for the purchase of stock, is unenforceable as against the corporation if the effect of such enforcement would be to prevent the payment of creditors in full.

2. The purchaser from a corporation of its stock under a contract that the corporation will, at the option of the purchaser, exercised within a certain time, repurchase or resell, is bound by his contract and is subject to the liabilities of a stockholder, notwithstanding that the contract, so far as the corporation is concerned, cannot be enforced against it after insolvency.

3. Under such circumstances a stockholder cannot recover upon the theory that there is a failure of consideration and that it would be inequitable and unfair to permit the corporation to retain the purchase price of the stock.

4. The mere fact that the corporation was insolvent at the time the contract was made does not alter the result.

5. The law, as above indicated, is the law of New York as well as the law of this state.

6. Whether such a contract is valid under any circumstances. *query.*

On appeal of Rosie Soos from determination of receiver rejecting claim.

*Messrs. Weller & Lichtenstein,* for the appellant.

*Messrs. Bilder & Bilder (Mr. Kaufman),* for the receiver.

LANE, V. C.

On May 18th, 1917, Schaefer Ball Bearings Company, Inc., a corporation of New York (the insolvent), and appellant Soos, in the State of New York, entered into a contract containing the following:

*90 N. J. Eq.*   Hoover Steel Ball Co. *v.* Schaefer Ball Bear. Co.

"In consideration of the fact that Rosie Soos buys forty shares of preferred stock at $100 per share, amounting to ($4,000) four thousand dollars, the Schaefer Ball Bearings Company, Inc., agrees to give as security three (3) Van Norman machines, which aggregates the sum of $3,285, and also one Cleveland automatic machine costing $2,280. The entire amount of security being approximately $5,000.

"If after one year said Rosie Soos wishes to withdraw her money from the company, the Schaefer Ball Bearings, Inc., will buy back or resell for her her forty shares for the same sum, namely, $100 per share, $4,000 as she invested, and pay the guaranteed dividend. This will be done after the company is given one month's notice, in order to look around for a new buyer, or get the amount from the earnings of the company;"

on or about May 1st, 1918, Soos demanded from the corporation the $4,000; the corporation did not pay; a receiver having been appointed by this court, upon the ground of insolvency, Soos filed her claim for $4,000, which claim the receiver rejected, and from the action of the receiver this appeal was taken. The case is submitted upon stipulated facts. It is stipulated that at the time the contract was made the corporation was insolvent and has ever since continued to be insolvent; it never had a surplus over and above its liabilities from May 18th, 1917; the agreement was made and entered into in the State of New York and is controlled by the laws of that state; this court may take judicial notice of the statutes and law of the State of New York. The receiver was appointed on the 24th day of May, 1918; no action was taken by Soos to enforce her claim between the date of the giving of her notice and the appointment of the receiver.

The stipulation is silent, as to the nature of the stock sold. It is also silent as to what was done with respect to investing Soos with the rights of a stockholder. I shall assume, in determining the case, that the stock issued was an original issue—that is, that it had not been previously issued and returned to the treasury, and I shall further assume that Soos was invested with all the rights of a stockholder and either did exercise, or might have exercised, those rights after the date of the making of the contract.

Although the stipulation is silent as to whether the security referred to in the agreement was in fact given, it is conceded in

the briefs of counsel that no steps were taken to effectuate this provision of the contract.

While it is stipulated that when the contract was made the corporation was insolvent, the claim is not based upon any theory of fraud practiced by the corporation or its officers upon appellant.

The question to be determined, therefore, is whether a contract made by a corporation at the time of the purchase of its stock to repurchase such stock, at the option of the stockholder, may be enforced at a time when the corporation is insolvent and the rights of creditors will be injuriously affected. I find it unnecessary to determine whether such an engagement on the part of the corporation is absolutely void as intimated by the supreme court of Washington in *Kom* v. *Cody Detective Agency, 50 L. R. A. (N. S.) 1073*, and by the circuit court of appeals for the sixth circuit in *Allen* v. *Commercial National Bank of Detroit, 191 Fed. Rep. 97*. Nor do I think it is necessary to determine whether the contract should be denominated a contract of sale and return for, whatever it may be called, I have concluded that that portion of it requiring the corporation to repurchase or resell its stock is unenforceable, at least unless it appears that its enforcement will not occasion injury to creditors, and that, notwithstanding this, the other party to the contract, the purchaser of the stock, is bound thereby.

I have reached this conclusion upon the law of this state, and I find nothing in the New York statute law or in the New York decisions which would indicate that the law of New York is otherwise.

It must be conceded that under the law of this state a corporation may purchase its own stock for legitimate purposes (now provided for by statute). *Chapman* v. *Ironclad Rheostat Co., 62 N. J. Law 497*; approved by the court of errors and appeals, *Berger* v. *United States Steel Corporation, 63 N. J. Eq. 809; Beach* v. *Palisade Realty and Amusement Co., 86 N. J. Law 238*. In considering this power, Vice-Chancellor Stevens, in *Oliver* v. *Rahway Ice Co., 64 N. J. Eq. 596*, said, referring to *Chapman* v. *Ironclad Rheostat Co.:* "I do not suppose that this decision goes the length of authorizing a corporation to pur-

chase and pay for its own stock if such purchase and payment will disable it from paying its debt in full, or of authorizing a corporation to contract with one or more of its stockholders to buy shares and so convert them into creditors entitled to come in on an equality with other creditors, if the assets be at the time insufficient to pay all the creditors in full." This limitation upon the power of a corporation to purchase its own stock has been approved by the court of errors and appeals in *Knickerbocker Importation Co.* v. *Board of Assessors, 74 N. J. Law 583,* and in *Beach* v. *Palisade Realty and Amusement Co., supra.* Vice-Chancellor Foster, in the unreported case of *Bayne* v. *Coming Egg Farm,* decided May 18th, 1918, on an appeal from determination of a receiver, disallowing a claim filed by an employe who, as a condition of his employment, had agreed to buy stock of the company under a contract with the corporation that it would, upon his severing his relations with the company, repurchase his stock, where the employe had severed relations on July 3d, 1916, at which date he served notice that he desired the corporation to repurchase his stock, but thereafter took no proceedings to compel the company to act until after the company was adjudged insolvent on March 26th, 1917, after referring to the cases that I have heretofore adverted to, held that the action of the receiver should be sustained, inasmuch as the allowance of the claim would result in preventing the property of the corporation being used to pay its legitimate debts in full, and would convert such a stockholder into a creditor of the company and thus enable him to participate equally with other creditors in the distribution of its assets and would increase the amount of the company's liability over its assets to such an extent as that the claims of actual creditors would not be paid fully.

That a contract such as I am now dealing with is unenforceable as against the corporation, if at the time it is sought to enforce it the corporation is insolvent, is, I think, the holding of the best reasoned authorities in other jurisdictions. *Allen* v. *Commercial National Bank of Detroit (Circuit Court of Appeals for the Sixth Circuit), supra; McIntyre* v. *E. Bement's Sons et al (Supreme Court of Michigan), 109 N. W. Rep. 45; Kom* v. *Cody Detective Agency (Supreme Court of Washing-*

*ton), supra,* and the rule is recognized in *Schulte* v. *Boulevard Gardens Land Co. (Supreme Court of California), 44 L. R. A. (N. S.) 156.* The case of *Ophir Consol. Mines Co.* v. *Brynteson (Circuit Court of Appeals for the Seventh Circuit), 143 Fed. Rep. 829,* is distinguished by the circuit court of appeals for the sixth circuit in *Allen* v. *Commercial National Bank of Detroit, supra.* If the *Ophir Case* can be considered as authority for the proposition that such a contract is to be considered as a contract for sale and return, and that the engagement of the corporation may be enforced after insolvency, then it is opposed to the great weight of authority and to sound reason.

The reasoning underlying the determination of the courts is that the capital stock of a corporation constitutes a trust fund for the payment of debts and that creditors are presumed to contract with the corporation upon the faith that its stock, so far as appears by its records, has been paid in, and that those who appear to be stockholders are, in fact, stockholders; this entirely aside from statute. If a purchaser of, or subscriber to, stock may contract with the corporation that it shall repurchase the stock, then every purchaser or subscriber may do likewise, and if these contracts may be enforced against the corporation after insolvency, then not only will creditors be deprived of recourse to the capital stock as a trust fund, but the apparent purchasers and subscribers will be converted into creditors to share with other creditors whatever assets there may be left. Such a situation is, of course, opposed to public policy and cannot be permitted to exist.

The claim on the part of appellant that if such contract is unenforceable as against the corporation, the consideration has failed, and that the purchaser is entitled to be repaid the amount paid for the stock because it is unfair that the corporation should retain it, is answered by the supreme court of Michigan in *McIntyre* v. *E. Bement's Sons et al., 109 N. W. Rep. 47,* in the following language: "But the promise of such a corporation to buy its own stock, if under any circumstances valid, must be considered as made and accepted with the understanding that the shareholder may not, in face of insolvency of the company,

change his relation from that of shareholder to that of creditor, escaping the responsibilities of the one and receiving the benefits of the other;" and by the circuit court of appeals for the sixth circuit, in *Allen* v. *Commercial National Bank of Michigan, supra,* in the following language: "To hold that the contract with the corporation to repay is invalid, but that Allen may demand repayment because of the failure of the expected consideration, is to accomplish by indirection the forbidden result. We think this contract is of the class where the valid provisions may stand unaffected by the invalidity of another provision, and where the law leaves the parties *pro tanto* where it finds them."

Considering, now, the law of New York, it seems to me to be clear that there is nothing in the New York decisions which indicates that the New York courts would hold other than I have held. In *Richards* v. *Ernst Wiener Co., 207 N. Y. 59; 100 N. E. Rep. 592,* the court of appeals had under consideration a contract of subscription in which contract the corporation had agreed, under certain circumstances, to repurchase. The statute of New York (section 664 of the Penal law, *Con. L. 1919 ch. 40*) forbids the officers and directors of a corporation to apply any portion of the funds of the corporation except surplus profits, directly or indirectly, to the purchase of shares of its own stock, and makes the officers and directors guilty of a misdemeanor if they do so. The court of appeals decided the case upon the ground that it was not shown that there were no surplus profits out of which the stock could be purchased. It approved the language of Judge Scott, in the appellate division, as follows: "The law will not presume, unless forced to do so, that a person intends to do an illegal act. It will not, therefore, presume that the parties intended to make an illegal contract. The contract itself was perfectly legal, subject to a certain limitation upon its enforceability. If, when the time came, defendant had a sufficient surplus the contract would be enforced. If it had not the contract could not be enforced." The circuit court of appeals for the second circuit (*In re Fechheimer Fishel Co., 212 Fed. Rep. 357,* New York) approved the determination of the supreme court of Michigan in *McIntyre* v. *E. Bement's Sons*

*et al., 146 Mich. 74; 109 N. W. Rep. 45,* and the general rule as I have expressed it. The court said: "As the illegality of a purchase by a corporation of its stock rests upon the fact that it withdraws assets upon which the creditors have a superior right or lien, it seems to us that even though the company may have been solvent when the contract to purchase was made, if it becomes insolvent later or is made insolvent by the transaction, and is in that condition at the time when payment is to be made, the vendor, cannot as against creditors be permitted to take the assets for that purpose in a state in which the statutes make it a criminal offence to apply directly or indirectly anything but surplus profits to the purchase by a corporation of its own stock. If the stockholder postpones the time of payment, he runs the risk of the corporation becoming insolvent in the meantime and must be held to a knowledge of the fact that he cannot enforce payment if in doing so he deprives the creditors of assets upon which they have a lien superior to any claim of his." Judge Hand, in the United States district court (*In re Tichenor-Grand Co., Ex parte Hartigan, 203 Fed. Rep. 720*), reached the same result after considering the *Ophir* and *Richards Cases* and he said: "However, the creditor asserts that, even though the contract was illegal, he may recover in *quasi*-contract. This, I must say, seems to me quite impossible. The very purpose of making the contract illegal is to prevent the shareholder from taking money out of the corporate treasury. It would be an absurd result to allow him to do it in another way. All cases which allow a recovery by contract implied in law do so for reasons of equity, to prevent the defendant from unjustly retaining what should go to the plaintiff. It would be quite paradoxical to declare illegal a contract because the corporation should in justice retain its capital for its creditors and not distribute it among shareholders, when in the next breath one directed the corporation to pay over the same capital to shareholders because it was unjust for the corporation longer to retain it."

As I have before indicated, it is stipulated that the corporation was insolvent at the time the contract was made, but this fact cannot, standing alone, at least, in anywise, affect the determination of the case. My conclusion is that the action of the

receiver should be sustained and the appeal dismissed, and I will advise an order to that effect.

It must not be considered that I have intimated an opinion that a contract such as I have been dealing with is, so far as the engagement of the corporation is concerned, valid at any time. I can readily conceive that the contract here involved may be distinguishable from the contracts considered in the *Chapman* and *Coming Egg Farm Cases.* In both of these cases the purchaser of the stock became such only because to become such was a condition of his employment. It may well be argued that where a corporation compels a person to become a purchaser of stock as a condition of employment that it may contract to repurchase the stock upon the cessation of the employment and that such a contract will be enforced subject to the limitations hereinbefore adverted to; that such a contract is the exercise by the corporation of its powers to purchase its stock for legitimate purposes, but that this reasoning does not apply to a case where the purchaser or subscriber stands to the corporation in no other relation, and it is sought as a condition to the purchaser becoming such to give him the power at his option to convert himself into a creditor. I express no opinion whatever upon this subject.