## M. B. FULLER v. MOTOR AND TIRE SERVICE CO.

### (Filed 9 December, 1925.)

1. **Corporations—Contracts—Shareholders—Assent—Evidence.**

    A contract will not be inferred as a matter of law to be that of the individual shareholders by reason of the want of assent of a majority thereof, and therefore not binding upon the corporation, when there is sufficient evidence to support the opposite view.

2. **Corporations—Contracts — Shares of Stock—Sales—Repurchase—Insolvency—Receivers.**

    Where a purchaser of stock of a corporation has agreed therewith that his stock would be purchased by the corporation in the event of his expressed dissatisfaction within two years, he may not enforce his agreement against creditors, etc., after the corporation is insolvent and is in the hands of a receiver. The validity of contracts of this character discussed by ADAMS, J.

APPEAL by defendant from *Lane, J.,* at August Term, 1925, of the Superior Court of CABARRUS County.

Plaintiff alleged that the defendant, incorporated 11 October, 1921, had been engaged before November, 1921, in doing a general motor-sales, repair, and vulcanizing business and that the plaintiff, also had

been engaged in the business of vulcanizing; that in the month of November, 1921, or about this time, the plaintiff and the defendant entered into an agreement by the terms of which the plaintiff was to sell and the defendant to purchase the plaintiff's business at the price of $2,500; that the defendant was to issue to the plaintiff 25 shares of its stock of the par value of $100 each; and "that if the plaintiff became dissatisfied with the management of the defendant company, said plaintiff could at any time within two years from the date thereof, by giving notice to the defendant of such intention, surrender said twenty-five shares of stock to the defendant and receive $2,500 cash money for his said vulcanizing business, instead of the 25 shares of stock." It was further alleged that within two years from the date of the agreement the plaintiff notified the defendant of his dissatisfaction and offered to surrender his stock in accordance with the contract and demanded in payment thereof the sum of $2,500 in cash; whereupon the defendant through its agent requested the plaintiff to wait until 1 January, 1924, and it would then absorb the stock and pay plaintiff the cash, but afterwards refused to do so.

The defendant denied these allegations, specifically alleging that no person had been authorized or empowered to make such an agreement on its behalf; and further that the alleged contract was *ultra vires,* against public policy, and void as to the creditors of the company.

The issues were answered as follows:

1. Did the plaintiff and the defendant enter into a contract whereby the plaintiff was to sell his vulcanizing business to the defendant company for 25 shares of its capital stock, as alleged in the complaint? Answer: Yes.

2. Did the defendant company agree with the plaintiff to take up said stock, and pay $2,500 therefor, upon notice from the defendant, at any time within two years from the date of the contract, as alleged in the complaint? Answer: Yes.

3. Did the defendant breach said contract, as alleged in the complaint? Answer: Yes.

4. What amount, if any, is the plaintiff entitled to recover of the defendant? Answer: $2,500.

Judgment in accordance with the verdict. The exceptions are referred to in the opinion.

*Palmer & Blackwelder, Hartsell & Hartsell for plaintiff.*
*J. L. Crowell, Sr., and H. S. Williams for defendant.*

ADAMS, J. Denying the plaintiff's right of recovery the defendant says (1) that the negotiation relied on was not a contract by the corporation but a personal promise of two of its three directors, who

owned a majority of the stock, and (2) that the contract if entered into by the defendant was contrary to public policy, *ultra vires,* and void as to creditors and stockholders not assenting thereto.

Upon the first proposition the defendant insists that the plaintiff is concluded by *Duke v. Markham,* 105 N. C., 131, in which it was held that the assent of a majority of the stockholders of a corporation expressed not in their meeting but elsewhere, will not bind the company. We find, however, by reference to the record in the present case that A. H. Jarrett, the vice-president of the defendant company, was also its general manager, and as such was invested with authority to make contracts according to the by-laws; and that by virtue of this authority he agreed with the plaintiff upon the terms of the contract set forth in the complaint. Record, p. 12. There is also some evidence of ratification. The result is, we cannot declare the contract invalid as an inference of law on the ground first assigned.

The second objection is not so easily to be disposed of. It involves the question of the defendant's liability under an agreement to repurchase shares of stock which the defendant had issued to the plaintiff. The answers to the second and third issues establish the fact that the defendant agreed to take up the plaintiff's stock and pay him $2,500 for it upon notice given at any time within two years from the date of the contract, and that after such notice the defendant refused to comply with its agreement. The contract was not in writing; it was made between 1 November, 1921, and 1 January, 1922, and the plaintiff's notice of dissatisfaction with the management of the company was given 1 October, 1923. The summons was issued 6 May, 1925, and on 13 June, 1925, the defendant made an assignment for the benefit of its creditors.

In regard to the scope and legal effect of a contract by which a private corporation agrees to sell its stock and to repurchase it upon the happening of a certain event, the decisions are not harmonious. There are at least three classes: (1) Those holding that such a contract is valid and enforceable, and not *ultra vires* or void as a secret agreement between the corporation and its subscriber; (2) those holding that it is voidable as to creditors, and especially that it will not be enforced after the corporation has become insolvent; and (3) those holding that even if the corporation be solvent and have no creditors such a contract will be avoided as against public policy, and in some cases as an unwarranted attempt to reduce the capital stock. *Porter v. Mining Co.,* 101 A. S. R. (Mont.), 569; *Schulte v. Land Co.,* 44 L. R. A. (N. S.), (Cal.), 156; *McIntyre v. Bement's Sons,* 10 Ann. Cas. (Mich.), 143; *Kom v. Detective Agency,* 50 L. R. A. (N. S.), (Wash.), 1073. See, also, *McGregor v. Fitzpatrick,* 25 L. R. A. (N. S.), (Ga.), 50, and note; *Tiger v. Cotton*

42—190

*Co.,* 30 L. R. A. (N. S.), (Ark.), 694, and note; *Hall v. Henderson,* 61 L. R. A. (Ala.), 621.

At present we are concerned not with the abstract right of a corporation to purchase its own stock (*Blalock v. Mfg. Co.,* 110 N. C., 99), but with the plaintiff's contention that he can enforce the contract under the conditions disclosed by the record. The evidence is that the defendant was insolvent when the action was brought and had been for several months theretofore, one of the stockholders testifying that in March, 1924, the stock was worthless. The trustee in the deed of assignment was made a party to the suit, and without filing a personal answer, he adopted that of the defendant. He is to be treated as a purchaser for value (*Cowan v. Dale,* 189 N. C., 684), and as a trustee for the defendant, its stockholders and its creditors. It is his duty to protect their rights and it must be assumed that he has this object in view.

The capital stock of a corporation is a trust fund for the benefit of creditors (*Foundry Co. v. Killian,* 99 N. C., 501), and it is very generally held that a contract entered into by a corporation to purchase its own stock will not be enforced after the corporation has become insolvent. The reason is, not that a corporation cannot buy its own stock, but to enforce the contract after the rights of creditors have intervened would amount to the perpetration of a fraud. *McIntyre v. Bement's Sons, supra,* and note; 1 Cook on Corporations, sec. 170; 14 C. J., 506, sec. 751. Our own decisions are in approval of this doctrine. In *Pender v. Speight,* 159 N. C., 612, the Court said: "An insolvent corporation cannot buy in its own stock, and if it becomes insolvent after such purchase the stockholder is liable to the creditor for the purchase money received by him. *Heggie v. Building and Loan Asso.,* 107 N. C., 581. It is generally held that a corporation cannot settle with its members by the application of assets to the retirement of their stock until it has first discharged all of its liabilities, and any agreement looking to such arrangement among its shareholders is void as to creditors."

If the plaintiff were to prevail the transaction on the assumption of insolvency would amount to nothing less than a repayment of his proportionate share of the defendant's assets, and to this extent the defendant would prefer the stockholder and impair the creditors' security. *Coöp. Asso. v. Boyd,* 171 N. C., 184; *Whitlock v. Alexander,* 160 N. C., 465.

There seems to be no doubt that the corporation is insolvent and if so, the motion for nonsuit should have been allowed; but as the question has not definitely been determined the plaintiff is entitled, if he see fit, to put it in issue. Even if solvency should be established other serious questions may arise.

New trial.