DAVIES, APPELLANT, *v.* MONTANA AUTO FINANCE CORPORATION, RESPONDENT.

(No. 6,552.)

FISCHER, APPELLANT, *v.* MONTANA AUTO FINANCE CORPORATION, RESPONDENT.

(No. 6,553.)

(Submitted January 9, 1930. Decided January 30, 1930.)

[284 Pac. 267.]

501

502

*Messrs. Murch & Wuerthner* and *Mr. Earle N. Genzberger,* for Appellants, submitted a brief; *Mr. Genzberger* argued the cause orally.

*Messrs. Hurd, Hall & McCabe,* for Respondent, submitted a brief; *Mr. H. C. Hall* argued the cause orally.

504

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

These two cases were consolidated for argument and one opinion will suffice for both. Both arise out of substantially

the same facts. What is said of one complaint will serve for the other, unless mention of difference is made.

It is alleged that the defendant issued certain shares of capital stock of the corporation to plaintiff upon an agreement that defendant would buy back the stock at any time, upon two weeks' notice, at the price therefor. One plaintiff, in reliance upon the agreement, bought forty shares of stock at the price of $5,000, and the other likewise bought sixteen shares at the price of $2,000. Thereafter each plaintiff gave the defendant two weeks' notice, and demanded that defendant buy back the stock as agreed, but defendant refused to buy the stock, claiming it was financially unable to do so, and ever since has so failed, neglected and refused.

It is alleged that at the time of and since the date of demand, the stock "then was and ever since has been worthless and of no value whatsoever," and that there is no market for the stock, nor has there ever been since the date of the demand; that plaintiff at all times named in the complaint has been, and now is, ready, willing and able to deliver to the defendant the certificate issued by defendant to the plaintiff for the stock upon the payment to her of the sum agreed to be paid by the defendant therefor, has offered the stock to the defendant, and has delivered to the clerk of the court the stock certificate duly indorsed. No part of the sum demanded by plaintiff has been paid by defendant.

1. In *Porter* v. *Plymouth Gold Min. Co.*, 29 Mont. 347, 101 Am. St. Rep. 569, 74 Pac. 938, 940, Judge Clayberg speaking for the court said: "We believe the rule to be well settled in the United States by the overwhelming weight of authority and reason that a private corporation may purchase its own stock if the transaction is fair and in good faith; if it is free from fraud, actual or constructive; if the corporation is not insolvent, or in process of dissolution; and if the rights of its creditors are in no way affected thereby," supporting the text with a long line of authorities. (And see 2 Fletcher's Cyclopedia on Private Corporations, sec. 1136; 14a C. J. 275.)

2. We shall assume that the agreement relied upon in each complaint was valid and not within any of the inhibitions mentioned in the foregoing quotation.

Some contention has been made by counsel for defendant ▮ that the persons who sold the stock for, and negotiated the agreements in behalf of, defendant were not authorized to do so, but we are not impressed by the argument. Both agreements were signed in the name of the corporation; one by the secretary-manager, "who was employed as the exclusive agent and officer with the authority to sell the capital stock of the corporation," and the other, following negotiations between the secretary-manager and the purchaser, by one signing as "Ass't Sec.-Treas."

The corporation seems to have issued the stock in regular course, and it certainly received and retained the money. It cannot now retain the benefits of the transaction and deny the authority by which the benefits were obtained. (*United States Nat. Bank* v. *Chappell*, 71 Mont. 553, 230 Pac. 1084; *Latulippe* v. *New England Inv. Co.*, 77 N. H. 31, 86 Atl. 361; *Tierncy* v. *Butler*, 144 Iowa, 553, 123 N. W. 213.)

3. The question whether a sufficient tender of the stock was ▮ made to the defendant seems to have disturbed the trial court, but is not seriously argued here. We have held repeatedly that a useless tender is not required, and that, when it is apparent that a tender, although required by an obligation, will be refused, it need not be made; all that is needed in such a situation is that the person obligated to make the tender should hold himself ready, willing and able to perform. (*Oscarson* v. *Grain Growers' Assn.*, 84 Mont. 521, 277 Pac. 14; *Hills* v. *Mutual Oil Co.*, 65 Mont. 317, 211 Pac. 314; *Finlen* v. *Heinze*, 32 Mont. 354, 80 Pac. 918.)

4. Counsel for defendant asserts that the contracts are not ▮ enforceable for the reason that the complaints show the defendant is insolvent. Plaintiffs allege that, at the time of demand, and ever since, the stock has been, and is now, worthless and of no value whatsoever. It would seem that this condition must exist as a result of one or two conditions

—either that the corporation's liabilities are greater than its assets, or the corporation has no assets. If the corporation, because of insufficiency of its assets, is unable to pay its debts in full, it is insolvent. (*Stadler* v. *First Nat. Bank,* 22 Mont. 190, 74 Am. St. Rep. 582, 56 Pac. 111; *National Bank of Anaconda* v. *Yegen,* 83 Mont. 265, 271 Pac. 612.) The general rule undoubtedly is that a contract by a corporation to repurchase its capital stock will not be enforced after the corporation has become insolvent. (*White* v. *Lorimer's City Dye Works,* 46 Idaho, 490, 269 Pac. 90; *Grinde* v. *Dakota Trust & Savings Bank,* (S. D.) 222 N. W. 670.) The rule is based, not upon the ground that a corporation has not the power to buy its own stock, but on the ground that, when the rights of creditors intervene, it would amount to a fraud on the creditors to enforce the contract. (Note to *McIntyre* v. *E. Bement's Sons,* 146 Mich. 74, 10 Ann. Cas. 143, 109 N. W. 45, 47, citing *In re S. P. Smith Lumber Co.,* (D. C.) 132 Fed. 618, affirmed, 140 Fed. 988, 72 C. C. A. 682; *Olmstead* v. *Vance etc. Co.,* 196 Ill. 236, 63 N. E. 634, affirming *Vance & Jones Co.* v. *Bentley,* 92 Ill. App. 287.)

The promise of a corporation to buy its own stock "must be considered as made, and accepted with the understanding that the shareholder may not, in face of insolvency of the company, change his relations from that of shareholder to that of creditor, * * * receiving the benefits of the other. To this rule there appears to be no exception." (*McIntyre* v. *E. Bement's Sons,* supra; and see 14a C. J. 280.)

"The reasoning underlying the determination of the courts is that the capital stock of a corporation constitutes a trust fund for the payment of debts, and that creditors are presumed to contract with the corporation upon the faith that its stock, so far as appears by its records, has been paid in, and that those who appear to be stockholders are, in fact, stockholders; this entirely aside from statute. If a purchaser of, or subscriber to, stock may contract with the corporation that it shall repurchase the stock, then every purchaser or subscriber may do likewise, and if these contracts may be en-

forced against the corporation after insolvency, then not only will creditors be deprived of recourse to the capital stock as a trust fund, but the apparent purchasers and subscribers will be converted into creditors to share with other creditors whatever assets there may be left. Such a situation is, of course, opposed to public policy, and cannot be permitted to exist." (*Hoover Steel Ball Co.* v. *Schaefer Ball Bearings Co.*, 90 N. J. Eq. 164, 106 Atl. 471, 472; *Grinde* v. *Dakota Trust & Sav. Bank,* supra.)

But there is no showing in the complaint that there are ██ any creditors of the defendant corporation, nor that the enforcement of plaintiffs' demands will work an injury to any stockholder. Where the reason for the rule fails, the rule fails, and upon the facts pleaded we see no reason why the plaintiffs are not entitled to judgment, even if the corporation is insolvent. (*O'Rourke* v. *Grand Opera House Co.,* 47 Mont. 459, 133 Pac. 965.) It may be argued that, in addition to the showing of insolvency, the defendant corporation is affirmatively shown to have creditors; that the plaintiffs claim to be creditors. But the foregoing discussion discloses that, if they are creditors, they may enforce their claims under certain conditions only; their claims will not be enforced if others are injured, as is explained above.

The district court sustained a general demurrer to each complaint and thereupon entered judgments for the defendant. From what has been said it appears that the demurrers should have been overruled. The judgment in each case is reversed, with direction to the trial court to overrule the demurrer.

ASSOCIATE JUSTICES MATTHEWS, GALEN, FORD and ANGSTMAN concur.