F. BERTRAM CLEVELAND *vs.* JENCKS MANUFACTURING CO.

APRIL 9, 1934.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

HAHN, J.   This is an action in assumpsit for breach of a written contract.   After a trial in the Superior Court, which resulted in a verdict for plaintiff for $5,311.64, the case is before this court on defendant's exceptions as follows:   to the denial of its motion for a directed verdict, to the denial of its motion for a new trial, to the refusal to charge the jury as requested and to certain portions of the charge.

It appeared in evidence that in the Spring of 1931 the plaintiff answered defendant's newspaper advertisement for a general manager who had "some cash."   As a result of conferences between plaintiff, defendant's secretary and a Mr. Kaplan (who was treasurer and one of the principal stockholders of the defendant corporation, and also a stockholder and the president of the United States Capital Corporation which controlled the defendant by ownership of stock therein), plaintiff and defendant—hereinafter called the corporation—entered into a written agreement.   By its terms plaintiff agreed to purchase 1,000 shares of stock in the corporation, at $5.00 per share, to be paid for as specified; defendant agreed to employ him for one year as vice-president and general manager at a salary of $100 per week, plus a conditional bonus.   The fourth paragraph of

said agreement, which forms the basis of this action, is as follows: "This agreement to be covered by a letter from Mr. Monroe Kaplan, President of the United States Capital Corporation, guaranteeing to purchase my 1,000 shares of stock at $5.00 per share at the end of one year if I should desire to sever my connection with the Company."

During said year plaintiff paid to the corporation the sum of $5,000 for stock subscribed for by him and acted as its vice-president and general manager. At the end of the year his employment terminated. He then by writ of attachment instituted the present action to recover damages for failure of the corporation to furnish the guarantee of Mr. Kaplan. The attachment was dissolved by giving a bond. Thereafter, on petition, the Superior Court appointed a receiver to take possession of defendant's property.

Plaintiff testified that during his employment he inquired twice of the secretary and once of the president of the corporation regarding the proposed guarantee by Mr. Kaplan and that they replied they would have it sent to him, but that no such guarantee was ever delivered to him. It appears that on several occasions during the year plaintiff conferred with Mr. Kaplan, and that he attended a directors' meeting when the latter was present, but never made any demand for said guarantee until after his employment terminated.

We will first consider the exception to the denial of the defendant's motion for a directed verdict. The pertinent portion of the motion was, in effect, that the contract to furnish a guarantee amounted to an agreement on the part of the corporation to purchase its own stock and that such an obligation cannot now be enforced because the corporation is insolvent and in the hands of a receiver, and the rights of creditors have intervened.

It is well established in law that a contract by a corporation to purchase its own stock is a valid obligation and is enforceable when such purchase will not impair the capital of the corporation to the detriment of its stockholders and

creditors. In Rhode Island this right is the subject of statutory enactment. Section 5 (g) of Chapter 248, General Laws, 1923, authorizes a corporation "To acquire, hold, sell and transfer shares of its own capital stock" but further provides "that no corporation shall use its funds or property for the purchase of its own shares of capital stock when such use would cause any impairment of the capital of the corporation." See *Adam* v. *New England Investment Co.*, 33 R. I. 193; *Garon* v. *Credit Foncier Canadien*, 37 R. I. 273.

It is obvious that an insolvent corporation would not possess assets sufficient to purchase shares of its own stock without impairing its capital. It is a fundamental principle of law that the capital of a corporation is a trust fund for its creditors and must not be depleted by allowing a claim arising through an agreement to purchase its own stock. And this principle is affected by neither the good faith of the parties to the transaction nor the fact that the corporation was solvent at the time the obligation arose.

In *Re International Radiator Co.*, 10 Del. Ch. 358, in construing a statute practically identical with our own, the court said: "the impairment of the 'capital' . . . means the reduction of the amount of the assets of the company below the amount represented by the aggregate outstanding shares . . . A corporation may use only its surplus for the purchase of shares of its own capital stock. . . . The funds and property of the company shall not be used for the purchase of shares of its own capital stock when the value of its assets is less than the aggregate amount of all the shares of its capital stock. A use by a corporation of its assets to purchase shares of its own capital stock under such conditions impairs the capital of the company."

Decisions of the courts of many states, some with and some without statutory provisions declarative of the law, sustain the principle that, when the enforcement of a contract to purchase stock would impair the capital of a corporation and bring the claim of the stockholder into

competition with the claims of general creditors, such enforcement cannot be permitted. *Acker* v. *Girard Trust Co.*, 42 Fed. (2d) 37; *Boggs* v. *Fleming*, 66 Fed. (2d) 859; *West Penn Chemical & Mfg. Co.* v. *Prentice*, 236 Fed. 891; *In Re O'Gara & Maguire*, 259 Fed. 935; *Matthews Bros.* v. *Pullen*, 268 Fed. 827; *Olmstead* v. *Vance & Jones Co.*, 196 Ill. 236; *Crandall* v. *Lincoln*, 52 Conn. 73; *McIntyre* v. *E. Bement's Sons*, 146 Mich. 74; *Davies* v. *Montana Auto Finance Corp.*, 86 Mont. 500; *Bayne* v. *Coming Egg Farm*, 111 Atl. (N. J.) 289.

The trial justice recognized but refused to apply the rule above stated on the ground that in the instant case the corporation had not agreed to purchase its own stock, its contract being to secure a guarantee from a third party to purchase it. Counsel for the corporation urges that this ruling allows the plaintiff to recover indirectly, as damages, what he could not recover directly, as the fixed price for the sale of his stock to the corporation; that payment through either of these methods has an identical result: the sum would be taken from the only fund now available to creditors of the insolvent corporation who are thus required to compete with a stockholder in the distribution of the assets, although these assets are considered to be a trust fund for creditors.

This contention cannot be seriously disputed. It is clear that, whether payment for the stock is made by the corporation or damages are assessed against it for failure to furnish another's guarantee to pay for it, the assets of the corporation would be diminished to the same extent, for the same general purpose and to the equal detriment of the creditors thereof. To permit the recovery of damages for failure to bring about the purchase of the stock by another would be to allow to be done by indirection what the statute expressly forbids to be done directly.

In the instant case, so far as appears, Kaplan personally is under no legal duty to furnish the guarantee to purchase the stock. The situation is therefore the same as though

Kaplan's name had not been included and the agreement had merely stated that the corporation would furnish an unnamed purchaser. In cases where unnamed persons are referred to as the prospective purchasers the courts have uniformly held this to be equivalent to the corporation's own agreement to purchase. See, *supra, Acker* v. *Girard Trust Co., Re International Radiator Co., West Penn Chemical & Mfg. Co.* v. *Prentice.*

Plaintiff urges as a further ground for sustaining the verdict and entering judgment thereon that the amount of the verdict will be paid by the surety company, which gave a bond to release the attachment upon property of the corporation, and that for this reason the assets of the corporation will not be diminished. This contention is opposed to the fundamental principle of law that a judgment must be based solely upon the legal rights of the litigants and not upon the result of the litigation. The fallacy of this argument is more clearly apparent when we consider the fact that if the surety is required to pay a judgment against its principal the amount paid in turn becomes a claim of the surety against such principal. In the instant case this claim would run against the assets of the corporation and diminish them to the same extent as would the allowance of the original claim.

To accomplish the purpose of our statute and prevent stockholders from impairing the capital of a corporation, the determining factor in construing a contract for the purchase by a corporation of its own stock must be, not the form of the contract, but the effect of the enforcement thereof upon the assets of the corporation. It may be assumed that no one would demand the purchase of his stock unless its value was less than the proposed purchase price. Such a purchase by an insolvent corporation adds nothing to its assets; in fact, payment for such stock deprives the creditors to that extent of funds primarily required for the payment of the corporation's debts. To permit such a purchase would, further, make it possible for those in the management and

control of the affairs of a corporation, by private agreement with others, to substantially diminish the assets of the corporation. And this, done directly or indirectly, would contravene the purpose of the statute.

It is our opinion that plaintiff's claim can not be sustained. He is not entitled to be paid for his stock from the assets of the corporation, and enforcing the agreement upon which he relies would compel such payment.

Defendant's exception to the denial of its motion for a directed verdict is sustained. It is therefore unnecessary to consider the other exceptions.

On April 16, 1934, the plaintiff may appear before this court and show cause, if any he has, why the case should not be remitted to the Superior Court with direction to enter judgment for the defendant.

*Ralph M. Greenlaw, Edwin J. Tetlow*, for plaintiff.

*Moss, Haslam & Arnold, William W. Moss, Charles R. Haslam, Harry A. Tuell*, for defendant.