17367

SHAYNE OF MIAMI, INC. Plaintiff, v. GREYBOW, INC., Defendant.
In Re Ida Grand, Respondent, v. George F. Townes, as Receiver
for Greybow, Inc., Appellant

(101 S. E. (2d) 486)

*Jack L. Bloom, Esq.*, of Greenville, *for Appellants,*

*Herman E. Cox, Esq.,* of Greenville, *for Respondent,*

*Jack L. Bloom, Esq.,* of Greenville, *for Appellant,*

December 16, 1957.

STUKES, Chief Justice.

Greybow, Inc., operated a store on Main Street in Greenville. It is a corporation, now in the hands of a receiver, of which the capital stock was $15,000.00. Robert B. Greybow owned half of the shares, and his former wife, Ida, owned the other half for which she paid in $7,500.00 upon organization of the corporation. Personal differences, which led to their separation in December, 1953 and subsequent divorce (after which she resumed her maiden name of Ida Grand), occasioned the sale of her stock to him. An attorney of his selection prepared an agreement which was dated and executed on December 21, 1953. The parties, individually, executed the instrument which recited the desire of Ida to sell and assign her stock in the corporation to Robert, which she did for the recited consideration of $11,250.00, payable in monthly installments of $250.00, beginning January 30, 1954, with interest from date at five per cent per

annum and an acceleration of maturity clause upon six months default in the payments. The amount was agreed upon by appraisal of the total worth of the corporation at $18,000.00 with the addition of $2,250.00 to the value of Ida's shares, which latter represented the unpaid balance of a loan by Ida's mother to the corporation that had been assigned to Ida. It was provided that in case of default, at Ida's election her former stock should be returned to her and the corporation liquidated or sold and from the proceeds, after payment of the indebtedness of the corporation, the balance owing Ida should be paid as a "preferred" claim; the remainder, if any, of the proceeds should go to Robert. If the indebtedness to Ida should be paid in full, then her former stock should be the unencumbered property of Robert, and Ida should have no further interest in the corporation. The note would be paid by Robert from the funds of the corporation and he would not be personally liable in the event of default; the assets of the corporation would satisfy the indebtedness due Ida. As further security for the payments to Ida, Robert agreed to "place in escrow" his shares in the corporation, and also Ida's former shares, in a safe deposit box in a designated bank. An attached note was referred to and made a part of the agreement; and the bank was authorized to deliver all of the stock to Robert upon payment of the indebtedness.

The attached note, referred to in the above agreement, was dated December 1, 1953 and was executed by Greybow, Inc., by Robert, president. It obligated the corporation to pay to Ida "on order" the indebtedness of $11,250.00 upon the terms stated in the agreement, which was referred to and made a part of the note.

The evidence establishes the solvency, indeed prosperity, of the corporation at the time of the execution and delivery of the foregoing note and agreement, but it later became insolvent and was placed in receivership by order of the trial court on June 18, 1956, and appellant is the receiver. He rejected the claim of Ida for the unpaid

balance of $9,973.29 upon the indebtedness evidenced by the note and agreement. Originally he took three positions against the validity of the claim, as follows: (1) that a corporation cannot purchase its own stock, (2) that the corporation was insolvent at the time of the stock purchase, and (3) failure or absence of consideration. However, at the hearing in the lower court the receiver conceded that a corporation may purchase its own stock if it acts in good faith and there is no charter or statutory restriction and the corporation is neither insolvent nor in the process of dissolution, and such purchase is not prejudicial to the rights of creditors at the time of the purchase; and the receiver further admitted that none of these disqualifications existed; therefore, objections (1) and (2) were withdrawn and it was so adjudged, from which there is no appeal and that is the law of this case.

The foregoing concessions left for consideration of the court only the receiver's position (3), that there was no consideration for the note of the corporation, wherefore it is not a proper claim against its assets in liquidation. In opposition, Ida's counsel contended that the inconsistency of the instruments resulted from a mutual mistake of fact because it was intended by the parties that the corporation should receive and own the stock, and it is therefore liable for the purchase price of it. There is no contention with respect to the portion of the note which represents the unpaid balance of the loan by Ida's mother to the corporation, which was assigned to Ida. Nor is there any claim of fraud or imposition upon creditors.

Ida testified at the hearing that she and her husband agreed that she was to sell her stock to the corporation, which would pay for it. The attorney who prepared the instruments testified similarly and could not recall why the note and agreement are inconsistent in that particular. Robert did not testify although he was present at the hearing.

The court found from the evidence that the parties to the instruments had agreed that Ida would sell her stock in the corporation to it for $9,000.00 and that by mutual mistake the instruments did not embody that agreement, whereby it was held in effect that the promissory note alone expressed the true agreement.

The testimony of one Kaplan, bookkeeper of the corporation since the year 1950, was to the effect that he entered upon the books of the corporation "notes payable" to Ida for the purchase of stock, and made payments to her from the corporate funds for some months. Later the item was deleted from the balance sheet of the corporation for the purpose of improving it when efforts were made to find a purchaser, but there was no notice to Ida of the change on the books; and the altered balance sheet was not exhibited to any creditor, or for the purpose of obtaining credit.

The court concluded, as said, that there was a mutual mistake of fact from which Ida should be relieved, which was not denied by Robert. In view of that conclusion the defense of the receiver of failure or lack of consideration was rejected, wherefore the claim of Ida was allowed as filed.

The receiver has appealed and contends (1) that the obligation of the corporation, evidenced, by its promissory note, insofar as it represents the unpaid portion of the purchase price of the stock, is unenforceable for lack of consideration; and (2) that the facts do not warrant the reformation of the agreement, as adjudged by the trial court. We may limit our decision to (1) and need not consider the trial court's theory of reformation because, giving effect to the instruments as written, in the light of the testimony, there was consideration for the note of the corporation. It was not *nudum pactum*, as is contended by appellant. The consideration was the detriment to Ida, the promisee, which resulted from the transfer and assignment by her of her shares, then worth $9,000.00, to Robert. If the stock later became worthless, that is of no moment. *Calhoun v. Calhoun*, 2 S. C. 283. *Blease & Baxter v. Pratt*, 3 S. C.

513. *Jackson v. Carter,* 128 S. C. 79, 121 S. E. 559. 7 Am. Jur. 950, Bills and Notes, Sec. 252.

An age-old definition of consideration is, "a benefit ■ to the party promising, or a loss or detriment to the party to whom the promise is made." 17 C. J. S., Contracts, § 70, p. 420. "A long series of decisions has established the rule that a benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract." 12 Am. Jur. 570, Contracts, Sec. 79. For the last quoted text there are cited in the footnote our leading cases of *Ferrell v. Scott,* 2 Speers 344, 42 Am. Dec. 371, and *Furman University v. Waller,* 124 S. C. 68, 117 S. E. 356, 33 A. L. R. 615.

"Consideration may be given to the promisor or to ■ some other person." Restatement of Contracts, Sec. 75(2). "It matters not from whom the consideration moves or to whom it goes. If it is bargained for as the exchange for the promise, the promise is not gratuitous."*Id., Comment e.* "A benefit to a third person is a sufficent consideration for a promise." 17 C. J. S., Contracts, § 89, p. 436. To the same effect is 10 C. J. S., Bills and Notes, § 148(a) and (b), pp. 601, 602. "Consideration may move to the promisor or to a third person." 12 Am. Jur. 569, Contracts, Sec. 76. "Accordingly, such consideration may be said to consist in any benefit to the promisor, or in a loss or detriment to the promisee * * *." 7 Am. Jur. 925, Bills and Notes, Sec. 233. "Anything which confers benefit on the party promising, or is loss or inconvenience to the party to whom the promise is made, is a sufficient consideration." *Fiske v. Judge,* 2 Speers 436. "It is not controlling that the consideration should be a benefit to the promisor." *Ellis & Co. v. Carroll,* 68 S. C. 376, 47 S. E. 679, 680. "But loss or detriment to the promisee is sufficient as a consideration as well as benefit to the promisor." *Davis v. Blum,* 104 S. C. 218, 88 S. E. 465, 467.

The judgment of the lower court is sustained under Rule 4, Sec. 8, of this court.

There is a third contention of appellant, which has not been overlooked. It is that the payments made by the corporation on the note should have been apportioned between the amount of it which represented the purchase price of the stock and that part which was for money borrowed by the corporation. Affirmance of the judgment renders this contention irrelevant.

On the record before us in this case there is presented for decision none of the questions which frequently arise where a corporation undertakes to purchase shares of its own stock and is then, or thereby, or subsequently becomes insolvent. See the many decisions thereabout which are collected in the annotation in 47 A. L. R. (2d) 758. Nor is any such question raised by the exceptions of appellant to the judgment of the lower court; and it is not the function of an appellate court to supply a ground for reversal. 3 S. C. Dig., Appeal and Error, § 719 p. 438.

Affirmed.

TAYLOR, LEGGE and MOSS, JJ., concur.

OXNER, J., dissents.

OXNER, *Justice* (dissenting).

I find no sound basis upon which respondent's claim against the receiver for the balance due on the purchase price of her stock can be sustained. The position taken by her throughout this litigation has been that she sold her stock to the corporation and not to her husband and that the agreement between her and Greybow should be reformed to show that such was the intention of the parties. The County Judge took that view and allowed a reformation. I think the agreement discloses in clear and unambiguous language an intention to sell the stock to Greybow and that parol evidence was inadmissible to show that the sale was to the corporation. Be that as it may, however, I do not think the claim can be sustained on either theory.

I shall first consider the transaction as a sale of respondent's stock to the corporation. It must be conceded

that the great majority of the American Courts now take the view that in the absence of charter or statutory prohibition, a solvent corporation may lawfully purchase and hold its own stock provided it acts in good faith and without prejudice to the rights of creditors, and has a surplus with which to make the purchase. In these jurisdictions the right of a corporation to purchase its own stock is confined within strict limits either by statute or judicial decision. It has been said that "the underlying reason for limiting share purchases springs from the necessity of imposing safeguards against the depletion by a corporation of its assets and the impairment of its capital needed for the protection of creditors." *Fletcher, Cyclopedia of Private Corporations,* Permanent Edition, Volume 6A, page 363.

It would serve no useful purpose to discuss further the abstract right of a corporation to purchase its own stock or the restrictions and limitations which should be placed upon the exercise of such a right. Assuming that this corporation had the right to buy this stock from respondent and that the contract was valid at that time, the question we have to decide is as to the effect of the subsequent insolvency of the corporation upon its obligation to pay for the stock.

The great weight of authority is to the effect that although an agreement by a corporation to buy its stock is made in good faith while solvent, if it becomes insolvent before the purchase price is paid, an obligation given by the corporation for the stock cannot be enforced as against the rights of creditors then existing. Such obligation then becomes subordinate to the claims of general creditors. *In re Fechheimer Fishel Co.,* 2 Cir., 212 F. 357; *Matthews Bros. v. Pullen,* 1 Cir., 268 F. 827; *Boggs v. Fleming,* 4 Cir., 66 F. (2d) 859; *Robinson v. Wangemann,* 5 Cir., 75 F. (2d) 756; *Fuller v. Motor & Tire Service Co.,* 190 N. C. 655, 130 S. E. 545; *Cleveland v. Jencks Mfg. Co.,* 54 R. I. 218, 171 A. 917; *White v. Lorimer's City Dye Works,* 46 Idaho 490, 269 P. 90; *Davies v. Montana Auto Finance Corpora-*

*tion,* 86 Mont. 500, 284 P. 267; *Hoover Steel Ball Co. v. Schaefer Ball Bearings Co.,* 90 N. J. Eq. 164, 106 A. 471.

The underlying reason for the foregoing conclusion was variously stated in some of these decisions as follows:

"A transaction by which a corporation acquires its own stock from a stockholder for a sum of money is not really a sale. The corporation does not acquire anything of value equivalent to the depletion of its assets, if the stock is held in the treasury, as in this case. It is simply a method of distributing a proportion of the assets to the stockholder. The assets of a corporation are the common pledge of its creditors, and stockholders are not entitled to receive any part of them unless creditors are paid in full. When such a transaction is had, regardless of the good faith of the parties, it is essential to its validity that there be sufficient surplus to retire the stock, without prejudice to creditors, at the time payment is made out of assets. In principle, the contract between Wangemann and the corporation was executory until the stock should be paid for in cash. It is immaterial that the corporation was solvent and had sufficient surplus to make payment when the agreement was entered into. It is necessary to a recovery that the corporation should be solvent and have sufficient surplus to prevent injury to creditors when the payment is actually made. This was an implied condition in the original note and the renewals accepted by Arthur Wangemann." *Robinson v. Wangemann, supra,* 75 F. (2d) 756, 757.

"The reasoning underlying the determination of the courts is that the capital stock of a corporation constitutes a trust fund for the payment of debts, and that creditors are presumed to contract with the corporation upon the faith that its stock, so far as appears by its records, had been paid in, and that those who appear to be stockholders are, in fact, stockholders; this entirely aside from statute. If a purchaser of, or subscriber to, stock may contract with the corporation that it shall repurchase the stock, then every purchaser or subscriber may do likewise, and if these con-

tracts may be enforced against the corporation after insolvency, then not only will creditors be deprived of recourse to the capital stock as a trust fund, but the apparent purchasers and subscribers will be converted into creditors to share with other creditors whatever assets there may be left. Such a situation is, of course, opposed to public policy, and cannot be permitted to exist." *Hoover Steel Ball Co. v. Schaefer Ball Bearing Co., supra,* 90 N. J. Eq. 164, 106 A. 471, 472.

"The capital stock of a corporation is a trust fund for the benefit of creditors * * *, and it is very generally held that a contract entered into by a corporation to purchase its own stock will not be enforced after the corporation has become insolvent. The reason is not that a corporation cannot buy its own stock, but to enforce the contract after the rights of creditors have intervened would amount to the perpetration of a fraud." *Fuller v. Motor & Tire Service Co., supra,* 190 N. C. 655, 130 S. E. 545, 546.

"If at the time the stockholder receives payment for his stock the payment prejudices the creditors, payment cannot be enforced. If a stockholder sells his stock to a corporation which issued it, he sells at his peril and assumes the risk of the consummation of the transaction without encroachment upon the funds which belong to the corporation in trust for the payment of its creditors. The right of the creditors of the corporation cannot be defeated by the fact that at the time the transaction was entered into the seller of the stock and the officers of the company who purchased it were acting in good faith and supposed that the company was solvent." *In re Fechheimer Fishel Company, supra,* 212 F. 357, 363.

It seems clear from the foregoing authorities that if the note be regarded as representing an obligation by the corporation for the purchase of its own stock, it is not enforceable as against existing creditors.

If we consider the transaction, as I think it was, as a sale of the stock to Greybow, any obligation given by the corporation to pay for Greybow's stock would be *ultra vires* and

unenforceable. It is generally held that a note given by a corporation for the purchase price of stock purchased by a third party from a stockholder, and for which the corporation received no benefit or consideration whatever, is an *ultra vires* contract and unenforceable against the right of creditors. *Pratt v. Valliquette,* 338 Mich. 397, 61 N. W. (2d) 648; *In re Stucky Trucking & Rigging Co.,* 3 Cir., 243 F. 287, 288; *Schloss Bros. & Co., Inc. v. Monongahela National Bank,* 3 Cir., 60 F. (2d) 365; 13 Am. Jur., Corporations, Section 833; Annotation 47 A. L. R. 78. In the case of *In re Stucky Trucking & Rigging Co., supra,* the Court said:

"That part of the claim in question which has not been reduced to judgment, and which is based on promissory notes given by the bankrupt, admittedly, for an indebtedness of a third party to the claimant, is unquestionably an unenforceable obligation against the bankrupt. It would be difficult, indeed, to imagine a more flagrant example of an *ultra vires* contract than that which resulted in giving the notes in question. They represent part of the purchase price of a certain amount of the capital stock of the bankrupt corporation which Allen individually purchased from Stucky, and for which the corporation received no benefit or consideration whatever. If a transaction of this kind were to receive legal sanction, there would be no security either in corporate investment or in the dealings between a corporation and those who might become its creditors."

A more difficult question arises from the fact that the questions above discussed were apparently not presented to the Court below, nor are they squarely embraced within the exceptions on appeal. But I do not believe that a receiver may through error or misconception of the law on the part of his attorneys so tie the hands of this Court as to compel us to allow what to my mind is obviously an invalid claim and thereby prevent a proper distribution of the assets of this estate. There were no pleadings before the Court below. The receiver denied liability. The difficulty is that he did not do

so on precisely the right grounds. I think this Court would be fully warranted in yet allowing him to make a proper defense of this claim either by reargument in this Court or by remanding the case to the lower Court.

I fully agree with the view that litigants should conform to the rules of this Court governing exceptions on appeal, but here the receiver is an officer of the court, not a private litigant, and is subject at all times to the control and direction of the court in the discharge of his duties. In the case of an insolvent corporation, he "represents, not only the corporation, but also its stockholders and creditors, and it is his duty to assert and protect the rights of each of these several classes of persons; he is regarded as a trustee for them." *In re American Slicing Machine Co.,* 125 S. C. 214, 118 S. E. 303, 304. It is stated in Clark on Receivers, 2nd Edition, Volume 1, page 33: "When the court appoints a receiver and manager of a business or undertaking it assumes the management into its own hands, for the manager is the servant or officer of the court and upon any question arising as to the character and details of the management it is the court which must direct and decide."

"It is not within the power or function of a receiver to stipulate the law, in a proceeding in court, adversely to the interests of his trust." 75 C. J. S., Receivers, § 167, page 806. In *Leach v. State Savings Bank of Logan,* 202 Iowa 265, 209 N. W. 421, it was held that the failure of a receiver of an insolvent bank to assert non-applicability of a statute at trial did not prevent the assertion thereof on appeal. The Court there said:

"The principal contention for the appellee is that the appellant has no right to raise any question here on appeal which he did not raise at the trial in the district court. The contention is that the receiver did not make the point in the district court that the question at issue was controlled by the later statute. It is urged, therefore, that he waived the point. It is urged also that a certain stipulation by the parties in the district court amounted to such a waiver. * * * The

burden was upon the claimant to establish his right to a preference. The receiver properly stood upon the defensive. He was under no burden of specification. The receiver did resist the claim at all stages of its presentation. He was under no legal requirement to advance argument. If he advanced unsound argument in his resistance, he was not thereby barred from bringing forward sound argument. Nor was the court precluded from sustaining his resistance upon a correct view of the law, even though he himself had advanced mistaken views of the law. The issue presented was essentially one of general denial. Until final judgment the duty of correct decision under the existing law rested upon the court at all times."

In *Willcox v. Riverview Memorial Park, Inc.*, 214 S. C. 527, 53 S. E. (2d) 648, 650, a claim for $3,000.00 was filed with the receiver for legal services rendered the corporation prior to the receivership. The Circuit Court allowed the claim in the full amount of $3,000.00. On appeal to this Court, the receiver contended that the claim was barred by the statute of limitations and that the claimants were estopped from claiming a fee in excess of $500.00. The exceptions raising these issues were overruled by this Court and although no question had been raised as to the amount charged for these legal services, the Court remanded the case for the purpose of determining the reasonableness of the fee, stating:

"Although the reasonableness of respondents' fee was not an issue before the lower Court, nor is it an issue on this appeal, yet the fund in the hands of the receiver being under the control of the Court, it has plenary power to make full inquiry into the justness of any claim against such fund, and this case is therefore remanded to the Circuit Court for the purpose of establishing the amount of a reasonable fee, in the light of surrounding conditions, for the respondents' services, which cannot be determined from the present record."

It is interesting to note that in the majority opinion respondent's claim is sustained upon a ground not advanced by her nor passed upon by the County Judge, and it has not been argued in respondent's brief. The judgment is sustained under Rule 4, Section 8 of this Court which gives us "the right to sustain any ruling, order or judgment upon any grounds appearing in the record." If this may be done for a respondent in an ordinary case, no good reason appears why we cannot *sua sponte* raise the proper grounds upon which this claim should be defended by an officer of this Court.